# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT SUPERIOR COURT FOR THE DISTRICT OF COLUMBIA**

Civil Division

Formatted: Font: Bold

| | |
|---|---|
| RICKY SCOTT,<br>*Individually, on Behalf of Himself and on Behalf of the General Public of the District of Columbia*<br>c/o Migliaccio & Rathod, LLP<br>412 H Street, NE<br>Washington, DC 20002<br><br>    Plaintiff,<br><br>    v.<br><br>APPLE INC.,<br>1 Infinite Loop<br>Cupertino, CA 95014<br><br>    Defendant. | Case No.: **23-cv-00475-RDM**2023 CAB 000161<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Formatted: Left

**PRIVATE ATTORNEY GENERAL AND CLASS ACTION COMPLAINT**

Plaintiff Ricky Scott ("Plaintiff"), by and through his undersigned counsel, on behalf of himself, all other persons similarly situated, and the general public of the District of Columbia, brings this class action against Defendant Apple Inc. ("Defendant" or "Apple"), who engages in retail sales via internet, telephone, and retail stores in the District of Columbia. Plaintiff makes the following allegations pursuant to the investigation of counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

**I.     NATURE OF THE ACTION**

1

1.    This is a private attorney general and consumer class action seeking monetary damages and injunctive relief for Plaintiff, the general public of the District of Columbia, and members of the Class (defined below) pursuant to the Consumer Protection Procedures Act ("DCCPPA"), D.C. Code 28-3901 *et seq.*, for unfair and deceptive trade practices committed by Defendant with regard to certain of their Macbook Pro laptop computers (the "Macbook Pros").

2.    This action arises from Apple's concealment of a material defect in 2018, 2019, and 2020 Macbook Pros (the "Class Laptops"). Over time, opening and closing the lid of a Class Laptop damages the delicate ribbon cables in the display assembly that control the display and camera (the "flex cables") and, ultimately, causes the display and/or camera to fail (the "Defect").

3.    Damage caused by the Defect renders the Class Laptops unsuitable for their essential purpose as portable computers because it renders the display unusable. Telltale symptoms of the Defect include colored blocks and lines that partially or wholly obscure the display, a display that blacks out when the laptop is fully opened, and a display that goes black permanently. These problems can manifest suddenly but more commonly they worsen over time as opening and closing the laptop further damages the flex cables. Accordingly, the Defect is material: once the display fails, a Class Laptop can no longer be used as a portable computer.

4.    Repairing the Defect is an expensive undertaking. Although comparable flex cables cost approximately $10, the flex cables in the Class Laptops are integrated into the display assembly and cannot simply be replaced without replacing the entire display assembly—a roughly $600 repair.

5.      Many Class Laptop owners have communicated with Apple's employees and agents to request that Apple remedy and/or address the Defect and/or resultant damage at no expense.  Apple has failed and/or refused to do so.

6.      As a result of Apple's unfair, deceptive, and fraudulent business practices, owners of the Class Laptops, including Plaintiff, have suffered an ascertainable loss of money and/or property and/or value.  The unfair and deceptive trade practices committed by Apple were conducted in a manner giving rise to substantial aggravating factors.

7.      Apple has long been aware of the Defect in the Class Laptops. Indeed, as discussed below, Apple has tried and failed to fix the Defect at least twice since it first manifested in the 2016 Macbook Pros. Yet, notwithstanding its longstanding knowledge of the Defect, Apple routinely has refused to remedy the Defect or repair damaged Class Laptops without charge.

8.      Had Plaintiff and Class members known about the Defect at the time of purchase, they would not have bought the Class Laptops, or would have paid substantially less for them.

9.      As a result of the Defect and the monetary costs associated with attempting to repair the damage stemming from the Defect, Plaintiff and Class members have suffered injury in fact, incurred damages, and otherwise have been harmed by Apple's conduct.

10.     Accordingly, Plaintiff brings this action to redress Apple's violations of the DCCPA.

## II.      PARTIES

11.     Plaintiff Ricky Scott is an individual who, at all times relevant herein, was a resident of the District of Columbia. He brings this action on behalf of himself and all members of the putative class.

12.     Defendant Apple, Inc., is incorporated under the laws of the State of California
and maintains its principal place of business in Cupertino, California.  In August 2018, Apple
became the world's first company to record a market capitalization of $1 trillion and, in August
2020, became the first publicly traded U.S. company to surpass $2 trillion in value.[1]

13.     A key part of Apple's strategy to maintain strong brand loyalty involves its design
of an extensive and interconnected ecosystem within and among products. The nature of Apple's
ecosystem makes it impractical and undesirable to exit the ecosystem when considering a new
product purchase. For these reasons and others, consumers like Plaintiff generally prefer Apple's
products, including its laptops.

### III.    JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this civil action pursuant to ~~D.C.
Code § 11-921 and D.C. Code §28-3905(k)~~ the Class Action Fairness Act, 28 U.S.C. §1332(d),
~~since~~ because this action (i) involves minimal diversity of citizenship among the parties; (ii) an
amount in controversy exceeding five million dollars; and (iii) includes more than 100 proposed
plaintiff class members.

~~14.~~15.   Venue is proper in this District, under 28 U.S.C. § 1391(b), ~~Plaintiff's claims arise
under District of Columbia law and~~as a substantial part of the events or omissions giving rise to
Plaintiff's claims occurred within the District of Columbia, including Plaintiff's purchase of his
Class Laptop.

~~15.~~16.   This Court has personal jurisdiction over Defendant ~~pursuant to D.C. Code § 13-
423 and~~ because Defendant~~s have~~ has sufficient minimum contacts in and with the District of

---

[1] Sergei Klebnikov, *Apple Becomes First U.S. Company Worth More Than $2 Trillion*, Forbes (Aug. 19, 2020),
*available at* https://www.forbes.com/sites/sergeiklebnikov/2020/08/19/apple-becomes-first-us-company-worth-
more-than-2-trillion/?sh=56d534a66e6e (*last accessed* October 20, 2022).

Columbia and otherwise intentionally availed itself of the markets within the District of
Columbia through their business activities, such that the exercise of jurisdiction by this Court is
proper and necessary. Defendant transacts business in the District of Columbia, advertises and
markets its products in the District of Columbia, disseminated the afore-described
representations and deceptions throughout the District of Columbia, and derives a substantial
income from the sale of products in the District of Columbia giving rise to personal jurisdiction.

### IV.    THE INTERESTS OF THE GENERAL PUBLIC

16.17.  Apple designed, manufactured, marketed, advertised, warranted, and sold the
Class Laptops directly or indirectly (through its website or dealers and other retail outlets) to the
general public of the District of Columbia.  The Class Laptops are inherently defective and are
therefore also contrary to the expectations imparted by Defendant through its representations and
omissions to the general public.

17.18.  Defendant has caused injury and adverse effects to the general public of the
District of Columbia.

18.19.  Plaintiff acts for the benefit of the general public as a private attorney general for
claims in this action arising under the DCCPPA, which expressly authorizes an individual to act
"on behalf of both the individual and the general public . . . seeking relief from the use of a trade
practice in violation of a law of the District when that trade practice involves consumer goods or
services that the individual purchased . . . ." *See* D.C. Code § 28-3905(k)(1)(BA).

### V.    PLAINTIFF'S SPECIFIC FACTUAL ALLEGATIONS

19.20.  Plaintiff Ricky Scott is an adult resident of the District of Columbia. On or about
August 13, 2020, he purchased an Apple MacBook Pro (16-inch, 2019) from Amazon.com for

approximately $2,099.  Included within this purchase price was a subscription to AppleCare+, Defendant's extended warranty program.

20.21.  Approximately one to two months after his purchase, Plaintiff Scott noticed alternatively bright and dim areas along the bottom of the display when he opened his laptop; this phenomenon is known as "stage lighting" and is shown in Figure 7 below. Around the same time, colored vertical blocks and lines began appearing on his display. At first the lines and blocks obscured only part of the screen, but they would worsen (*i.e.*, cover more of the screen) when Plaintiff Scott opened his screen to a larger angle. Plaintiff Scott also observed that the blocks and lines would worsen when his laptop was under a heavy processing load (*e.g.*, when running resource intensive programs). Over time the colored blocks and lines grew to cover most of the display when they appeared and were similar to the display shown in Figure 8 below. Approximately four to six months after purchase, the backlight on Plaintiff Scott's new Macbook Pro stopped working completely, rendering his laptop unusable.

21.22.  Plaintiff Scott contacted Apple about his malfunctioning Macbook Pro and was directed to a third-party vendor for repairs. On or about April 28, 2021, Plaintiff brought his malfunctioning MacBook Pro to P2P Computer Solutions, who repaired his laptop under the AppleCare+ extended warranty program. Plaintiff Scott paid a $99 deductible for this repair because Apple categorized the problem as relating to accidental damage.

23.    Plaintiff relied on Apple's representations in purchasing his Class Laptop. Before purchasing the laptop, Plaintiff saw advertisements and marketing materials on Apple's website in which Apple represented, among other things, that the Class Laptop displays were the "best ever" among all of Defendant's laptop computers.

22.24.  Plaintiff specifically recalls seeing the following representation (or a substantially similar representation) about his Class Laptop on Defendant's website prior to purchasing his laptop: "The Retina display in MacBook Pro is the best ever in a Mac notebook. It features bright LED backlighting and a high contrast ratio, delivering deep blacks and bright whites. It supports P3 wide color for even more vibrant greens and reds than with sRGB. And the 13- and 15-inch models with Touch Bar feature True Tone technology. The white balance automatically adjusts to match the color temperature of the light around you — for a more natural viewing experience."[2] Plaintiff relied on this and the other, similar representations he viewed on Defendant's website in deciding to purchase his laptop.

## VI.    GENERAL FACTUAL ALLEGATIONS

### A.    The Macbook Pro Line of Laptops

23.25.  Apple first introduced the Macbook Pro line of laptops in January 2006. In roughly every year since then, Apple has updated the Macbook Pro with new features, including the "Retina Display" and "Touch Bar." Every new iteration has incorporated faster processors and more memory, among other features, while also typically becoming thinner and lighter than prior models. "The MacBook Pro laptop is Apple's highest-end portable computer and it is differentiated by its faster processor and larger screen that are ideal for video editors, software developers and gamers."[3]

---

[2] *Macbook Pro (2019)*, Apple.com (archived May 31, 2019), *available at* https://web.archive.org/web/20190531022057/https://www.apple.com/macbook-pro/ (*last accessed* October 20, 2022).
[3] Bloomberg, *Apple launches MacBook Pro laptop with revamped keyboard*, LATimes.com (Nov. 13, 2019), *available at* https://www.latimes.com/business/technology/story/2019-11-13/apple-macbook-pro-revamped-keyboard  (*last accessed* October 20, 2022).

~~24.~~26.  Between the initial launch in 2006 and the date of this Complaint, Apple has launched five generations of Macbook Pro laptops. The laptops that comprise each generation are substantially similar to each other in terms of hardware and design.

~~25.~~27.  On or about October 27, 2016, Apple inaugurated the fourth generation of Macbook Pros with new 13-inch and 15-inch Macbook Pro models (the "2016 Models"). Defendant characterized the 2016 Models as the thinnest and lightest Class Laptops ever, with the "best ever" display of all prior Macbook Pros.[4] The 2016 Models were up to 17% thinner than previous models; for example, the 13-inch model measured 14.9 mm of thickness, down from 18 mm from the prior model.[5]

~~26.~~28.  To allow for their more compact design, the 2016 Models employed flexible ribbon cables to connect the display to a display controller board known as the "t-con board" located near the back of the base. These cables are thin and flat, in contrast with the larger gauge wire cables used for the same purpose in Macbook Pros predating the 2016 Models.

~~27.~~29.  Defendant released updated versions of the fourth generation Macbook Pros as follows: updated 13-inch Macbook Pros were released in 2017, 2018, 2019, and 2020; updated versions of the 15-inch models were released in 2017, 2018, and 2019; and the 15-inch model was replaced by a 16-inch model in late 2019, and which was subsequently updated in 2020.

---

[4] *See ** Official ** Apple Special Event - Oct 2016 - MacBook Pro - Touch Bar*, YouTube.com (Oct. 28, 2016), *available at* https://www.youtube.com/watch?v=19J1oK1981k (stating: "It is simply the thinnest and lightest MacBook Pro we have ever made," and "The display of the new Apple Pro is simply the best display we've ever made on a Mac.") (*last accessed* October 20, 2022); *Macbook Pro* (2016), Apple.com (archived Oct. 27, 2016), *available at* http://web.archive.org/web/20161027220820/https://www.apple.com/macbook-pro/ (last accessed Nov. 30, 2022) (Apple's website emphasized that "[t]he new display in the Class Laptops is the best ever in a Mac notebook," and that it "ensures truer-to-life pictures with realistically vivid details . . . .") (*last accessed* October 20, 2022).
[5] *Id.*

**B.    The Class Laptops**

~~28.~~30.  The Class Laptops are all fourth generation Macbook Pros. The earliest Class

Laptop models were released on July 12, 2018, while the latest model was released on May 4,

2020. In all relevant respects, the Class Laptops contain substantially identical hardware. In

particular, each of them employs thin and delicate flex cables to connect the display assembly to

the t-con board.

~~29.~~31.  Apple released the first of the Class Laptops on or about July 12, 2018 (the "2018

Macbook Pros"). The base models initially retailed for $1,799 and $2,399 for the 13-inch and 15-

inch models, respectively.

~~30.~~32.  Defendant's marketing focused heavily on the "new True Tone technology in

[the] Retina display" of the 2018 Macbook Pros,[6] as well as their purported superior quality.

Defendant's relevant representations include the following:

    a.  "Retina Display with True Tone Delivers Ultimate Viewing Experience."[7]

    b.  "Best Mac notebook display ever now features True Tone technology for a more

       natural viewing experience."[8]

    c.  "With 500 nits of brightness and support for the P3 wide color gamut, the Retina

       display on MacBook Pro is the best Mac notebook display ever. Now with True

       Tone technology, the display and Touch Bar deliver a more natural viewing

       experience for design and editing workflows, as well as everyday tasks like

       browsing the web and writing email."[9]

---

[6] *Apple updates MacBook Pro with faster performance and new features for pros*, Apple.com (Jul. 12, 2018), *available at* https://www.apple.com/newsroom/2018/07/apple-updates-macbook-pro-with-faster-performance-and-new-features-for-pros/ (*last accessed* October 20, 2022).
[7] *Id.*
[8] *Id.*
[9] *Id.*

  d. "Stunning Retina display with True Tone technology."[10]

  e. "The Retina display in MacBook Pro is the best ever in a Mac notebook. It

   features bright LED backlighting and a high contrast ratio, delivering deep blacks

   and bright whites. It supports P3 wide color for even more vibrant greens and reds

   than with sRGB. And the 13- and 15-inch models with Touch Bar feature True

   Tone technology. The white balance automatically adjusts to match the color

   temperature of the light around you — for a more natural viewing experience. . . .

   So you can . . . edit video on location, or enjoy a movie on the go."[11]

  ~~31.~~33.  Defendant also represented that the 2018 Macbook Pros were suitable for uses

that depend on a high quality display, such as photography ("Retouch, edit, and work with high-

resolution photos in Photoshop at lightning speed."), video editing ("Edit multicam clips in Final

Cut Pro X using up to nine streams of Apple ProRes RAW 4K video on the 15-inch MacBook

Pro."), and gaming ("Play a graphics-intensive game like Fortnite and enjoy responsive

performance and vivid detail.").[12]

  ~~32.~~34.  Apple released the next iterations of the Class Laptops on or about July 12, 2018

May 21, 2019, and July 9, 2019 (the "2019 Macbook Pros").[13] The base models initially retailed

for $1,799 and $2,399 for the 13-inch and 15-inch models, respectively.

---

[10] *Macbook Pro (2018)*, Apple.com (archived July 31, 2018), *available at*
https://web.archive.org/web/20180731102343/https://www.apple.com/macbook-pro/ (*last accessed* October 20,
2022).

[11] *Id.*
[12] *Id.*
[13] *Apple introduces first 8-core MacBook Pro, the fastest Mac notebook ever*, Apple.com (May 21, 2019), *available*
*at* https://www.apple.com/newsroom/2019/05/apple-introduces-first-8-core-macbook-pro-the-fastest-mac-notebook-
ever/ (*last accessed* October 20, 2022).

~~33.~~35.  In its marketing, Defendant consistently promoted the superlative quality of the display in the 2019 Macbook Pros, often referring to it as a "stunning Retina display with True Tone technology."[14] Defendant's relevant representations include the following:

    a.  "MacBook Pro features the best Mac notebook display ever, a stunning Retina display with 500 nits of brightness, support for the P3 wide color gamut and True Tone technology, for a natural, true-to-life viewing experience."[15]

    b.  "[W]ith powerful graphics, the brilliant and colorful Retina display, . . . , make[s] MacBook Pro the world's best pro notebook." [16]

    c.  "The Retina display in MacBook Pro is the best ever in a Mac notebook. It features bright LED backlighting and a high contrast ratio, delivering deep blacks and bright whites. It supports P3 wide color for even more vibrant greens and reds than with sRGB. And the 13- and 15-inch models with Touch Bar feature True Tone technology. The white balance automatically adjusts to match the color temperature of the light around you — for a more natural viewing experience."[17]

    d.  "[The Retina display features] 25% more colors than sRGB."[18]

    e.  "The 13-inch MacBook Pro packs . . . the best Mac notebook display ever into a portable 3-pound design. Today, the entry-level 13-inch MacBook Pro adds . . . True Tone to the brilliant Retina display . . . all at the same great starting price of $1,299, or $1,199 for college students. With all these powerful features, MacBook

---

[14] *Id.*
[15] *Id.*
[16] *Macbook Pro (2019)*, Apple.com (archived May 31, 2019), *available at* https://web.archive.org/web/20190531022057/https://www.apple.com/macbook-pro/ (*last accessed* October 20, 2022).
[17] *Id.*
[18] *Id.*

Pro is the perfect choice for students heading into college and looking for the

notebook that will help power them through graduation and beyond."[19]

~~34.~~36.   As with the 2018 Macbook Pros, Defendant represented that the 2019 Macbook

Pros were suitable for uses that depend on a high-quality display.

~~35.~~37.   On or about November 13, 2019, Defendant introduced a 16-inch version of the

Macbook Pro.[20] The base version of this laptop retailed for $2,399.

~~36.~~38.   Defendant's marketing of this laptop was substantially similar to that of previous

Class Laptops, including specific representations about the qualities of the backlight. Defendant

referred to the "16-Inch Retina Display" as "[i]mmersive" and "brilliant."[21] Defendant's relevant

representations include the following:

    a.   "With its brilliant 16-inch Retina display, . . . the 16-inch MacBook Pro is the

       world's best pro notebook."[22]

    b.   "Largest Retina Notebook Display Ever"[23]

    c.   "Pros love the brilliant 500 nit, P3 wide color gamut Retina display on MacBook

       Pro, and at 16 inches, it's the largest Retina notebook display ever. Featuring a

       resolution of 3072x1920 and a higher pixel density of 226 ppi, the 16-inch Retina

       display delivers nearly 6 million pixels and an even more immersive front-of-

---

[19] *MacBook Air and MacBook Pro updated for back-to-school season*, Apple.com (Jul. 9, 2019), *available at*
https://www.apple.com/newsroom/2019/07/macbook-air-and-macbook-pro-updated-for-back-to-school-season/ (*last accessed* October 20, 2022).
[20] *Apple introduces 16-inch MacBook Pro, the world's best pro notebook*, Apple.com (Nov. 13, 2019), *available at*
https://www.apple.com/newsroom/2019/11/apple-introduces-16-inch-macbook-pro-the-worlds-best-pro-notebook/ (*last accessed* October 20, 2022).
[21] *Id.*
[22] *Id.*
[23] *Id.*

screen experience. Each display is individually calibrated in the factory for accurate gamma, white point and primary colors."[24]

d. "With an immersive 16-inch Retina display, superfast processors, next-generation graphics, the largest battery capacity ever in a MacBook Pro, a new Magic Keyboard, and massive storage, it's the ultimate pro notebook for the ultimate user."[25]

e. "A big, beautiful workspace. For doing big, beautiful work."[26]

f. "The new MacBook Pro features a stunning 16-inch Retina display — the largest Retina display ever in a Mac notebook. It produces 500 nits of brightness for spectacular highlights and bright whites, while delivering deep blacks thanks to the precise photo alignment of liquid crystal molecules. And the P3 wide color gamut enables brilliant, true-to-life images and video. So no matter where you are, you'll see your work in the best possible light."[27]

g. "The narrow-band LED-powered backlight allows MacBook Pro to represent the P3 wide color gamut for brilliant, true-to-life color in photos and videos."[28]

h. "16-inch Retina display for an immersive viewing experience."[29]

37.39.  On or about May 4, 2020, Defendant updated the 13-inch version of the Macbook Pro.[30] The base version of this laptop retailed for $1,299.

---

[24] *Id.*
[25] *Macbook Pro (16-inch, 2019)*, Apple.com (archived Nov. 30, 2019), *available at* https://web.archive.org/web/20191130213458/https://www.apple.com/macbook-pro-16/ (*last accessed* October 20, 2022).
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*
[30] *Apple updates 13-inch MacBook Pro with Magic Keyboard, double the storage, and faster performance*, Apple.com (May 4, 2020), *available at* https://www.apple.com/newsroom/2020/05/apple-updates-13-inch-macbook-pro-with-magic-keyboard-double-the-storage-and-faster-performance/ (*last accessed* October 20, 2022).

38.40.  Defendant's marketing of this laptop was substantially similar to that of previous Class Laptops. Defendant's relevant representations include the following:

a.  "[T]he 13-inch MacBook Pro is both highly portable and packed with performance and advanced technologies. Its stunning and brilliant 13-inch Retina display delivers more than 4 million pixels and millions of colors, along with 500 nits of brightness and support for the P3 wide color gamut. And with True Tone technology, the display offers a more natural viewing experience for design and editing workflows, as well as for everyday tasks such as browsing the web and writing email." [31]

b.  "Stunning Retina display with True Tone technology."[32]

c.  "The Retina display features bright LED backlighting and delivers deep blacks and bright whites. It supports P3 wide color for even more vibrant greens and reds than with sRGB. And every MacBook Pro features True Tone technology. The white balance automatically adjusts to match the color temperature of the light around you — for a more natural viewing experience. . . . Movies are more immersive." [33]

39.41.  As shown above, Apple's representations regarding the premium quality, reliability, and suitability of the Class Laptops' displays are substantially identical for the 13-inch, 15-inch, and 16-inch Class Laptops. For each of the Class Laptop models, Defendant made

---

[31] *Id.*
[32] *Macbook Pro (13-inch, 2020)*, Apple.com (archived Jun 26, 2020), *available at* https://web.archive.org/web/20200626121926/https://www.apple.com/macbook-pro-13/ (*last accessed* October 20, 2022).
[33] *Id.*

specific representations about the display's quality as well as its brightness, color gamut, and contrast ratio capabilities.

40.42.  Consumers across the country pay a premium price for the Class Laptops. This is based at least in part on Apple's marketing of the Macbook Pro line—including the Class Laptops—as Apple's best laptops: high-end portable computers featuring cutting-edge technology and first-in-class displays.

**C.    The Defect in the Class Laptops**

*1.    The Defect is Caused by Defendant's Use of Fragile Ribbon Cables*

41.43.  Contrary to Defendant's marketing, the Class Laptops possess a uniform physical defect that causes their displays and/or cameras to fail prematurely. The Defect is latent, as it arises from the defective design of flex cables hidden inside the Class Laptops. Symptoms of the Defect typically manifest after several months of use or later, as the Defect typically damages the flex cables gradually.

42.44.  Beginning in the 2016 Models, Apple opted to use flexible—and fragile—ribbon cables to connect the display to the t-con board inside the base enclosure. Starting at the t-con board, the flex cables wrap around the board, exit the base enclosure through an opening at the back of the laptop, travel over the hinge cover and enter the top panel, where they connect to display and camera components. In the small gap between the base enclosure and the top panel, spring-loaded covers shield the tops of the flex cables and press them against the hinge cover.

43.45.  The below image shows the two spring-loaded covers, four flex cables, and the t-con board as they are integrated into the display assembly:

15



*Figure 1*

44.46.  The flex cables are extremely thin. This slender profile helps them navigate the tight bends along their circuitous route from the t-con board to the display (and allows Apple to make the Macbook Pros smaller). Macbook Pro models released before 2016 used a thicker wire cable for the same purpose. For this reason, Macbook Pros manufactured prior to the 2016 redesign rarely, if ever, experience the issues described below.

45.47.  Opening a Class Laptop pulls the flex cables tighter as the top panel hinges away from the base enclosure. Thus, opening a Class Laptop subjects the flex cables to bending stress. Over time, this stress causes the conductors in the flex cable to fatigue and, eventually, to fracture. Failure due to fatigue caused by bending stress is the "most common type of cable-flex failure."[34] Bending stress increases as the radius or angle of the bend decreases, which is why the flex cables often break where they wrap around the t-con board. The further the flex cables are

---

[34] *Id.*

pulled the more bending stress they experience; this is why many Class Laptop owners have
adopted the prophylactic strategy of never fully opening their laptops to the maximum angle.
After enough cycles of opening and closing, especially if the user is opening the screen to the
maximum angle, the conductors will fatigue in the flex areas and begin to fracture.[35]

    ~~46.~~48.  The images below show flex cables exhibiting fractures and tears consistent with
failure due to fatigue caused by repetitive bending stress:



*Figure 2*



*Figure 3*

---

[35] *See Tech Note: Understanding Cable Stress and Failure in High Flex Applications*, Gore.com, *available at*
https://www.gore.com/resources/tech-note-understanding-cable-stress-and-failure-high-flex-applications (*last
accessed* October 20, 2022).

47. 49.  In addition to failures caused by bending stress, the flex cables are also vulnerable to damage caused by dust and debris. The opening at the rear of the Class Laptops allows outside matter to enter the base enclosure. This debris often accrues underneath the flex cables where they are routed over the hinge cover before they enter the top panel. Opening a Class Laptop pulls the flex cables taut against the hinge cover and any hard particles sitting between the flex cables and hinge cover will "dimple," abrade, or otherwise damage the flex cables by fracturing the conductors. This is exacerbated by the spring-loaded covers, which ensure that the flex cables are snug against the hinge cover.

48. 50.  Below are two images illustrating debris accumulation between the flex cables and hinge cover.[36]



*Figure 4*

---

[36] Louis Rossman, *How dust DESTROYS irreplaceable parts of your Macbook Pro.*, YouTube.com (Dec. 22, 2021), *available at* https://www.youtube.com/watch?v=gFlYkxS8Ii4 (*last accessed* October 20, 2022).



*Figure 5*

~~49~~ 51.  The two photos below show typical damage to a flex cable caused by trapped particles: the left photo shows two concavities on the underside of the flex cable and the right photo shows corresponding protrusions on the other side.[37] The damage shown below was sufficient to cause glitches to appear on the display of the impacted Class Laptop.[38]



*Figure 6*

---

[37] Apple Pie Tech, *DustGate on MacBook and Pro TouchBar 2015-2019 caused by pinched LCD Flex Cables causing Lines*, YouTube.com (Aug.20, 2021), *available at* https://www.youtube.com/watch?v=Z7peZU2KlkI (*last accessed* October 20, 2022).
[38] *Id.*

19

### 2.     The Defect Causes Severe Symptoms in Class Laptops

~~50.~~ 52.  Damage to the flex cables results in several common symptoms, depending on which of the ribbon cables have been damaged and how far the damage has progressed:

a.  *The "stage light" effect*: Minor damage to the backlight cable causes the backlight to produce alternatively bright and dim areas along the bottom of the screen. This so-called "stage lighting" is often the first manifestation of the Defect because the backlight cable is often the first cable to suffer damage.[39]



*Figure 7*

b.  *Partial backlight failure*: Further damage to the backlight cable causes the backlight to shut off when the screen is open to an angle greater than roughly 45 degrees, *i.e.*, a normal viewing angle, as increased tension on the backlight cable

---

[39] Taylor Dixon, *The Design Flaw Behind MacBook Pro's "Stage Light" Effect*, iFixit.com (Jan. 22, 2019), available at https://www.ifixit.com/News/12903/flexgate (*last accessed* October 20, 2022).

causes the conductors to disengage on either side of an incipient fracture.[40]

Without a backlight, the display appears black and is nearly impossible to read.

c. *Complete backlight failure*: Sufficient damage to the backlight cable causes the backlight to shut off completely regardless of the screen angle.

d. *Graphic glitches*: If one of the two graphics cables is damaged, the display will show visual "glitches," like lines or rectangles of varying brightness and color that partially or wholly obscure the display.



*Figure 8*

e. *Camera failure*: as with the backlight and graphics cables, damage to the camera cable will cause the camera cease to function normally. In the early stage, the camera may cease to function when the screen is open to an angle greater than 45

---

[40] Taylor Dixon, *The Design Flaw Behind MacBook Pro's "Stage Light" Effect*, iFixit.com (Jan. 22, 2019), available at https://www.ifixit.com/News/12903/flexgate (*last accessed* October 20, 2022).

degrees; further damage can cause the camera to cease functioning entirely, regardless of the screen angle.[41]

~~51.~~53.  A Class Laptop suffering from partial or complete backlight failure and/or graphic glitches is unable to be used for its ordinary and intended purpose. Although a Class Laptop in the stage lights phase of backlight cable failure may be used for its ordinary and intended purposes, that symptom is a precursor to partial or complete backlight failure, which renders a Class Laptop essentially unusable.

~~52.~~54.  The defective design of the flex cables is substantially similar among all Class Laptop models. For each of Class Laptops, normal use, *i.e.*, opening and closing the lids of the Class Laptops, damages the flex cables. In all models, therefore, the defective design causes substantially similar display and/or camera failure.

~~53.~~55.  Defendant replaced the thicker wire cable used in pre-2016 Macbook Pros with the thin and delicate flex cables to allow the Class Laptops to be even thinner and lighter. Likely for the same reason, Apple also "designed the cables as part of the display, so they cannot be replaced. This means that when (not if) those cables start to fail, the entire display unit needs to be replaced, as opposed to one or two little cables—effectively turning a $6 problem into a $600 disaster."[42]

~~54.~~56.  Defendant enacted a program to repair the damage caused by the Defect in one Macbook Pro model but has left owners of all other models with no recourse. On May 21, 2019, Defendant issued a notice on its website announcing the "13-inch Class Laptops Display

---

[41] *See The camera cable is also affected by Flexgate*, Discussions.Apple.Com (Sep. 19, 2020), *available at* https://discussions.apple.com/thread/251814887?answerId=253693695022#253693695022 (discussing camera failure as a manifestation of Flexgate) (*last accessed* October 20, 2022).
[42] Taylor Dixon, *The Design Flaw Behind MacBook Pro's "Stage Light" Effect*, iFixit.com (Jan. 22, 2019), available at https://www.ifixit.com/News/12903/flexgate (*last accessed* October 20, 2022).

Backlight Service Program," ("Backlight Service Program"), a repair service program to remedy

the Defect in the 2016 13-inch Macbook Pro.[43] The Backlight Service Program does not apply to

any of the 15-inch Macbook Pro models or any Macbook Pro models released after 2016 even

though the defective design in those models is substantially the same as the 2016 13-inch

Macbook Pro. As such, the Backlight Service Program is inadequate to address the impact of the

Defect on consumers.

### 3. *Defendant has Quietly Implemented Design Changes that Fail to Fix the Defect*

55 57.  Although Defendant has refused to publicly acknowledge the Defect outside of

the model covered by the Backlight Service Program, they have quietly attempted to fix it with

subtle design changes. Starting in the 2018 Macbook Pros, Defendant added two millimeters to

the length of the flex cables.[44] Defendant did not and has not publicly acknowledged this change;

Defendant made this change in an attempt to decrease tension on the flex cable when the screen

is opened. Nevertheless, the Defect has continued to manifest in 2018 Macbook Pros and

subsequent models. The Defect has persisted because it results from overly fragile flex cables

that are damaged in the course of ordinary use.

---

[43] *13-inch MacBook Pro Display Backlight Service Program*, Apple.com, *available at* https://support.apple.com/13-inch-macbook-pro-display-backlight-service (*last accessed* October 20, 2022).
[44] Whitson Gordon, *2018 MacBook Pros Try to Solve Flexgate Without Admitting It Exists*, iFixit.com (Mar. 4, 2019), *available at* https://www.ifixit.com/News/13979/apples-2018-macbook-pros-attempt-to-solve-flexgate-without-admitting-it-exists (*last accessed* October 20, 2022).



*Figure 9*

56.58.  Similarly, Defendant quietly implemented a design change in the 2020 Class Laptop that attempts to address the issue of trapped particles damaging the flex cables. Prior to 2020, flex cables in the Class Laptops were partially covered by ultrathin "stickers," essentially a layer of protective material overlaying the cable. Defendant increased the thickness of these stickers in the 2020 Macbook Pros in an apparent effort to provide additional protection against damage caused by trapped particles.[45] Defendant did not and has not publicly acknowledged this change. It is evident that this change did not fix the Defect because the telltale symptoms of flex cable damage caused by the Defect have appeared in 2020 Macbook Pros.

---

[45] Apple Pie Tech, *DustGate update. The issue might have been fixed by Apple on 2020 Models with Thicker Flex Guard*, YouTube.com (Aug. 30, 2021), *available at*  https://www.youtube.com/watch?v=2P8Xt245uJM (*last accessed* October 20, 2022).



*Figure 10*

**D.    The Defect is Material to Reasonable Consumers and Central to the Class
Laptops' Function**

~~57.~~59.  The Defect is both material to a reasonable consumer's decision to purchase the
Class Laptops and is central to their function. Many consumers have incurred substantial
expenses as a result of purchasing the Class Laptops, including the cost of the laptops, the cost to
repair the laptops, and the purchase of any external equipment used as a result of the backlight or
camera issues experienced with the Class Laptops.

~~58.~~60.  Laptops by design are meant to be portable and used in a variety of environments
and conditions.  They will be opened and closed in the normal course of use.  Subject to these
normal conditions, the monitor must remain fully functional for the computer to be usable.

~~59.~~61.  Numerous sources support this position.  Merriam-Webster, for example, defines
a "laptop" as "a portable microcomputer having its main components (such as processor,
keyboard, and display screen) integrated into a single unit capable of battery-powered
operation."[46]

---

[46] *Laptop*, Merriam-Webster, *available at* https://www.merriam-webster.com/dictionary/laptop (*last visited* October
20, 2022).

60.62.  HowStuffWorks supports this definition by drawing a distinction between a desktop computer and a laptop:

> A desktop computer includes a motherboard, video card, hard
> drive and other components in a large case.  The monitor,
> keyboard, and other peripherals connect wirelessly or with cables .
> . . A laptop, however, is much smaller and lighter than even the
> most compact PC tower.  Its screen is an integrated part of the unit,
> as is its keyboard.[47]

61.63.  Cambridge Dictionary defines "laptop" as "a computer that is small enough to be carried around easily and is flat when closed."[48]  Cambridge Dictionary provides the following alternative definition: "a computer that is small enough to be carried around easily and is designed for use outside an office."[49]

62.64.  According to Engineering360, "[t]he main advantage of a laptop is a compact form factor, facilitated by an integrated, hinged display . . . and can be transported in common toting articles, such as a briefcase or schoolbag."[50]

63.65.  RS Web Solutions states that "[t]he first and main advantage of a laptop, in comparison with a stationary computer, is its mobility . . . . Laptops are highly portable [by] virtue of their compact size.  They can be easily taken from one place to another in a carrying case or backpack.  This is what makes them a highly convenient device that you can carry even while traveling."[51]

---

[47] Tracy Wilson and Robert Valdes, *How Laptops Work*, HowStuffWorks.com (May 12, 2021), *available at* https://computer.howstuffworks.com/laptop.htm (*last accessed* October 20, 2022).
[48] *Laptop*, Cambridge Dictionary, *available at* https://dictionary.cambridge.org/us/dictionary/english/laptop (*last accessed* October 20, 2022).
[49] *Id.*
[50] *Notebook and Laptop Computers Information*, Engineering360, *available at* https://www.globalspec.com/learnmore/industrial_computers_embedded_computer_components/mobile_computing /notebook_laptop_computers (*last accessed* October 20, 2022).
[51] Souvik, *The Advantages and Disadvantages of Laptops You Should Know*, Rswebsols.com (Jun. 19, 2021), *available at* https://www.rswebsols.com/tutorials/technology/advantages-disadvantages-laptops#:~:text=Portability%3A,can%20carry%20even%20while%20traveling (*last accessed* October 20, 2022).

~~64.~~ 66.  Apple itself touts the thinness and portability of the MacBook Pros and acknowledges that users include professionals and students, who often transport their laptops between different environments.

~~65.~~ 67.  Matthew S. Smith, expert at Digital Trends, writes that because laptops are used outside of an office or other similar workstation, "[t]he display is arguably the second-most important piece of hardware in a good laptop.  After all, it's the means by which you actually use the device."[52]

~~66.~~ 68.  Brett Howse, expert at AnAndTech, writes that when purchasing a new laptop "it would be hard to argue that the display quality shouldn't be near the top.  There's no other part of a [laptop] that you're going to use more."[53]

~~67.~~ 69.  Accordingly, like Plaintiff, consumers seeking to purchase a laptop are, at a minimum, interested in purchasing (1) an integrated unit, combining the display, keyboard, and processor; that is (2) portable, allowing the user to easily move around and travel with their unit. In doing so, consumers reasonably expect their laptops to exist independently of external monitors for their use and to withstand the normal use involved in using their laptop, including but not limited to opening, closing, and adjusting their laptop display.

~~68.~~ 70.  However, as a result of the Defect, the Class Laptops are prone to backlight failure and graphics glitches that render the display and, therefore, the Class Laptops unusable as intended.

---

[52] Matthew S. Smith, *Laptop displays: Everything you need to know*, *Digital Trends* (June 3, 2020), *available at* https://www.digitaltrends.com/computing/everything-you-need-to-know-about-laptop-displays/ (*last accessed* October 20, 2022).
[53] Brett Howse, *AT 101: Understanding Laptop Displays & How We Test Them*, *AnAndTech* (July 10, 2018), *available at* https://www.anandtech.com/show/13054/at-101-understanding-laptop-displays (last accessed October 20, 2022).

**E.    Apple's Knowledge of the Defect**

~~69.~~71.  Plaintiffs and those similarly situated did not, and could not, unravel Apple's pattern of deception and public silence.

~~70.~~72.  Apple owed Plaintiffs and all those similarly situated a duty to disclose the Defect because Apple:

    a.  Possessed exclusive knowledge of the Defect and necessarily had superior knowledge of the Defect because, among other things, only Apple had access to the results of extensive pre-release testing and various organized repositories of internal data;

    b.  Intentionally and actively concealed the Defect by, among other things, deleting consumer complaints about the Defect posted to its website and shifting blame to the consumers instead of acknowledging the true nature of the Defect; and/or

    c.  Made incomplete and misleading representations and omissions, failing to warn purchasers that the Class Laptops were defective and failing to qualify its representations, including as to the laptops' screen quality.

~~71.~~73.  Apple's knowledge of the Defect stems from various sources, as detailed below.

~~72.~~74.  One court has already concluded that Defendant knew of the Defect prior to releasing the Class Laptops. *See Taleshpour v. Apple Inc.*, No. 5:20-cv-03122-EJD, 2021 U.S. Dist. LEXIS 62877, at *3, 35 (N.D. Cal. Mar. 30, 2021) (finding that "allegations of pre-release testing in combination with the allegations of substantial customer complaints are sufficient to show that Apple had exclusive knowledge of the Alleged Defect," *i.e.*, that the "backlight cables tear because they are 'too short and do not provide enough slack to withstand the repetitive opening and closing of the MacBook Pros.'").

### 1.     *Apple's Knowledge of the Defect Prior to Release*

~~73.~~75.   Apple knew or should have known about the Defect due to its extensive quality controls and pre-release testing process, as well as its experience with similar issues in other of its laptop models.

~~74.~~76.   Apple, like any product manufacturer, tests its products prior to release. *See In re Macbook Keyboard Litig.*, No. 5:18-cv-02813-EJD, 2019 U.S. Dist. LEXIS 68130, at *19-20 (N.D. Cal. Apr. 22, 2019) ("The CCAC alleges that Apple performs engineering tests on its hardware prior to release, which Apple concedes.").

~~75.~~77.   Prior to mass production, Apple first builds prototypes of the design to zero in on the final, mass production-ready design. The first prototype build is a test run of key product concepts to gain confidence that the product can work. Next comes the Engineering Validation Test, which consists of significantly increased quantities of units which must be fully functional and testable, and all functional test stations must be present and collecting data. Next comes the Design Validation Test where units are built made of components from production processes and on a line following production procedures. The Production Validation Test is the last build where units are built before ramp and mass production.

~~76.~~78.   During pre-production and before product release, Apple conducts extensive testing not only for each new product as a whole, but also for each and every part of each new product. Apple employs lead engineers who are tasked with leading the architecture, design and implementation of the test line for new products from pre-concept until mass production. Apple engineers define tests for functionality and performance early in the product development lifecycle.

~~77.~~79.   Apple conducts extensive validation testing before releasing its products to the marketplace, and its pre-release testing meets basic industry standards for assessing product

reliability and durability. The purpose of such testing is to expose any design or manufacturing weaknesses that may result in field failures, warranty claims, and general functional reliability over the intended life of their products.

78. 80.  Validation testing covers all system aspects of the device, including mechanical and system reliability, as well as safety, compliance to applicable standards, electromagnetic emissions, energy efficiency and sustainability. Mechanical and system reliability tests are designed and used to demonstrate that a laptop design and the finished product perform reliably for the life of the product.

79. 81.  Apple has acknowledged that it even designs its own machinery to perform various tests on its products, including but not limited to, the Class Laptops. Kate Bergeron, Apple's VP of Ecosystem Products and Technologies, has stated "Every new product requires its own test," and that, "We have to design fixtures so we can test the product. The team does tons and tons of work to try to characterize different designs as quickly as possible."[54]

80. 82.  Apple employs a team of Reliability Engineers who are responsible for leading and executing reliability tests on Apple technologies, including but not limited to the development of new test procedures to quantify the reliability of a design, stress tests, and failure analysis resulting from these tests.

81. 83.  Reliability Engineers conduct various technical analyses, including Failure Mode and Effects Analysis and Fault Tree Analysis. They also develop complex reliability test plans at each engineering design phase to target key design features and changes. Reliability Engineers also conduct reliability growth modeling and statistical risk assessments of failures using Highly Accelerated Life Testing and assess the Physics of Failure to predict the expected life of

---

[54] Steven Levy, *What I Saw Inside Apple's Top-Secret Input Lab,* Wired (Oct. 13, 2015), *available at* https://www.wired.com/2015/10/what-i-saw-inside-apples-top-secret-input-lab/ (*last accessed* October 20, 2022).

Macbook Pros. Such tests are used to project product longevity, weathering performance, and probability of failure.

~~82.~~84.  Real-life user studies are also a significant component of Apple's pre-release testing. Hundreds of employees are provided with pre-production units in the months leading up to a product launch and report back their experiences to Apple.

~~83.~~85.  Apple conducted extensive testing on the Class Laptops and each of its components, including the display and the parts it relied on. Apple designed, engineered, and extensively tested each of its Class Laptops' parts purportedly to ensure the highest quality, safety, and reliability.

~~84.~~86.  Defendant's pre-release testing would have revealed the Defect. For example, tests to simulate consumer experience, including real-life user studies, durability, and reliability tests, would have revealed the Defect. Because the Defect manifests during foreseeable normal consumer use, Apple's rigorous testing would have revealed that the Class Laptops suffer from the Defect during normal and foreseeable use by consumers.

~~85.~~87.  Additionally, Apple was aware of the Defect in the Class Laptops because its 2016 and 2017 Macbook Pros have been plagued by the same backlight issues. The problem was common enough to earn two nicknames—"Flexgate" and "Dustgate," depending on whether the damage was caused by bending stress or trapped particles—and generate a spate of articles.[55]

---

[55] *See, e.g.*, Taylor Dixon, *The Design Flaw Behind MacBook Pro's "Stage Light" Effect*, iFixit.com (Jan. 22, 2019), *available at* https://www.ifixit.com/News/12903/flexgate (*last accessed* October 20, 2022); Whitson Gordon, *2018 MacBook Pros Try to Solve Flexgate Without Admitting It Exists*, iFixit.com (March 4, 2019), *available at* https://www.ifixit.com/News/13979/apples-2018-macbook-pros-attempt-to-solve-flexgate-without-admitting-it-exists (*last accessed* October 20, 2022); Jon Porter, *Apple quietly addressed 'Flexgate' issue with MacBook Pro redesign*, TheVerge.com (Mar 5, 2019), *available at* https://www.theverge.com/2019/3/5/18251264/macbook-pro-2018-flexgate-fix-display-cable-2mm-longer (*last accessed* October 20, 2022); Vlad Savov, *Flexgate is real, and Apple should acknowledge it*, TheVerge.com (Mar 19, 2019), *available at* https://www.theverge.com/2019/3/19/18271733/flexgate-display-problem-macbook-pro-apple (last accessed October 20, 2022); Liam Tung, *Apple MacBook Pro owners cry foul: '$6 problem costs $600 to fix'*, ZDNet.com

86.88.  Although Apple has never publicly acknowledged the Defect (other than in regard to the Backlight Service Program, which covered only one Macbook Pro model among the many impacted), the company did quietly attempt to address the problem with design tweaks in 2018 and again in 2020. As discussed above, neither of these design changes remedied the Defect. However, each of them establishes that Defendant was aware of the Defect even as it refused to publicly acknowledge the issue.

### 2.     *Apple's Knowledge of the Defect After Release*

87.89.  Defendant knew or should have known about the Defect due to post-release failure analyses, internet reviews, consumer complaints, warranty claim data, repair data, and replacement part sales data.

88.90.  Once mass production begins, Apple's EFFA program is tasked with analyzing failures, defects, and other issues that arise after Defendant releases a product. EFFA begins in the first weeks after shipping, and manufacturing teams capture returned units back from the field in order to conduct failure analysis on them.[56] Defective devices are sent in for analysis and, "Often, they jury-rig a hardware fix, then coordinate a solution across Apple's global supply chain." *Id.* Defendant's EFFA team remains focused on products for months after launch and publishes a weekly internal report highlighting common issues reported by customers. *Id.* The EFFA program, which is run by Apple's AppleCare team, has been in place since the late 1990s.

89.91.  Apple would have gained knowledge of the Defect through the EFFA program's accumulation of data, including but not limited to many consumer complaints made directly to

---

(Jan. 23, 2019), *available at* https://www.zdnet.com/article/apple-macbook-pro-owners-cry-foul-6-problem-costs-600-to-fix/ (*last accessed* October 20, 2022).

[56] *See* Adam Satariano, *Apple's iPhone 6 First Responders*, Bloomberg.com (Sep. 4, 2014), *available at* https://www.bloomberg.com/news/articles/2014-09-04/for-iphone-6-defects-apple-has-failure-analysis-team-ready (*last accessed* Oct. 18, 2022).

Apple (online, telephonically, and in-person) and repeated service repair requests stemming from repeated display failures.

90.92.  Apple, like other hardware companies, collects, reviews, and analyzes detailed information about repairs requested or made on laptops still under warranty at its retail locations, repair centers, and third-party service centers, including the type and frequency of such repairs. Complete data on such repairs is exclusively within Apple's control and unavailable to Plaintiff without discovery.

91.93.  Apple employs field quality engineers that assess all aspects of field product quality for MacBooks and its other products.[57] As a key responsibility, these field quality engineers interpret data to manage and improve product and service quality. For example, field quality engineers track "field quality metrics such as annual failure rates, no trouble found rates, service cost, and repeat-repair." They play "a key role in new product launch early field failure analysis," perform "hands-on device failure analysis to support root cause analysis" and support "regular quality reviews that focus on performance trends, quality issues, and corrective actions."

92.94.  Defendant would have been made aware of the Defect due to the large number of repairs or repair requests made during the Class Laptops' warranty period and afterwards. Though Apple's repair data is not publicly accessible, it is apparent from publicly available data that a significant percentage of Class Laptop owners have sought repairs for the Defect. After receiving high quotes for repairs from Apple, consumers have also sought out repairs from other servicers and considered alternative solutions, including do-it-yourself fixes.

---

[57] *See Careers at Apple*, Apple.com (Oct 24, 2022), *available at* https://jobs.apple.com/en-us/details/200426120/field-quality-engineer?team=CUST (last accessed Oct. 24, 2022).

93.95.  Most consumers who sought a repair for issues stemming from the Defect found that Apple charged approximately $600-800 to replace the entire display assembly. Thus, when the Defect manifests after the warranty period expires, consumers are forced to pay a high price—around one quarter of the price of a brand-new Class Laptop—to have a functioning laptop.

94.96.  Defendant also monitors the internet for articles, comments, and posts made about the Defect. At a minimum, Defendant reviews on a weekly basis the comments posted to its own website (the Apple Support Communities forum) for problems with Apple devices.

95.97.  Online reputation management ("ORM") is now a standard business practice among most major companies, including Apple, and entails monitoring consumer forums, social media, and other sources on the internet where consumers can review or comment on consumer services. "Specifically, [ORM] involves the monitoring of the reputation of an individual or brand on the internet, addressing content which is potentially damaging to it, and using customer feedback to try to solve problems before the damage to the individual's or brand's reputation."[58]

96.98.  Internal Apple documents show that Apple considers and reports on consumer data from social media regarding consumer sentiments regarding design issues and unresolved or repeat repairs.

97.99.  For example, as to the MacBook keyboard defect that Apple denied for years, internal documents show that Apple employees, like consumers, grew frustrated with applying "band-aids" for the "various failure modes" in MacBooks. Apple employees sought to use "social media data" to justify finally waving the "'voice of the customer' flag" as "both customers and field agents [we]re really frustrated with the steaming bag of sh[]t . . . Apple has

---

[58] *Online Reputation*, WebSolutions, *available at* https://websolutions-maine.com/online-reputation/ (*last accessed* Oct. 20, 2022).

sold them."  Apple employees sent emails discussing the reporting on "[n]egative customer

sentiments" about design issues and "unresolved or repeat repairs."

98.100.        Thus, Apple reports on social media data reflecting negative consumer

data and has a strong presence on various popular platforms and carefully curates the reputation

of its brand and products.

99.101.        From previous litigation, Apple is aware that consumers provide feedback

about its products not only on Apple forums, but also on popular social media sites such as

Twitter, YouTube, and Reddit. Apple thus accounts for consumer online behavior in its online

reputation management strategy.

100.102.        Consumers posted comments on Apple's website, complaining about

backlight issues. However, many of those consumers complained that Apple was removing these

comments:

- "I have a feeling that Apple has a script that prevents you from posting anything that includes stage light, design flaw, or extended warranty. A tl;dr [sic] for that idea is that my Mac (2016 touchbar model) screen just died after suffering from the stagelight issue, so I wanted to rant on Apple support. Bad idea. It was instantly deleted."[59]

- User akjaineusanuj posted " . . . Also see https://discussionss.apple.com/thread/250... about this issue as well," to which user spearson replied "Looks like Apple deleted the topic on your issue just now."[60]

- "I have same issue. And according to the comments, Apple frequently deleted that issue whenever you post on their discussion forum . . . ."[61]

---

[59] Taylor Dixon, *The design flaw behind MacBook Pro's "stage light" effect*, iFixit.org (comment by user Joe Black (Mar. 14, 2019), *available at* https://web.archive.org/web/20190605233112/https://ifixit.org/blog/12903/flexgate/ (*last accessed* Dec. 12, 2020)).
[60] Answers Forum, iFixit.org (Jan. 22, 2019), *available at* https://web.archive.org/web/20190605233110/https://www.ifixit.com/Answers/View/486856/Screen+issues,+Back+light+dims+&+goes+out (*last accessed* Dec. 12, 2020).
[61] *Id.* (comment by user sishmuemaw (Dec. 25, 2018)).

101.103.     Apple's practice of deleting user comments concerning the Defect show that not only was the company aware of the problem with the defective flex cable design, but it was also actively trying to obscure the existence of the Defect by surreptitiously deleting relevant posts.

102.104.     Nevertheless, Class Laptop owners continued to post complaints to Apple's website about the impact of the Defect on their laptops, and Apple was or should have been aware of the Defect from those complaints. In the Apple Support Community forums there are several threads of comments from customers complaining of the impact of the Defect on their Class Laptops.

- **MacBook Pro (16-inch, 2019) no display backlight**

  Well, this happened. I closed my OOW 16" MacBookPro16,1 A2141 to get a drink and when I came back and opened it - no backlight in the display. I can see the display is working, and I can remote log in to access the computer and make adjustments. I reset SMC and NVRAM but no change. This appears to be a failed backlight cable, but I haven't had a look under the hood as yet. I used to work for an authorized Apple service provider so I know my way around but without a good replacement part to test with, I won't be able to confirm the issue.

  This seems similar to the backlight issue with the 13" Macbook Pro 2016 for which Apple has issued a repair extension.[62]

- **MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports) Backlight Issue**

  Good day,

  I found that my MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports) had the following issue:  The display backlight intermittently showed vertical bright areas along the entire bottom of the screen.

  This would only be temporary and would then disappear, so I ignored it as it didn't happen often.  I am now in the situation where the backlight has completely stopped working.  I know the display is still working because if I shine a LED light on the screen, I can see the images etc.

---

[62] *MacBook Pro (16-inch, 2019) no display backlight*, Discussions.Apple.com (Dec. 2, 2021), *available at* https://discussions.apple.com/thread/253425115 (*last accessed* Oct. 20, 2022) (2019 Macbook Pro).

I found that there was a Backlight Service Program listed here:
https://support.apple.com/13-inch-macbook-pro-display-backlight-service

However this model, MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports), in particular, isn't listed as part of this repair program.  I was wondering if this can be queried because the "symptoms" are exactly the same as listed in the URL above.  Perhaps others here have had this issue as well?[63]

- **Macbook Pro 2018 screen doesnt work. Work only with external screen**

  My MBP 2019 (with touch bar) screen just went black out of sudden.

  However when I plugged into external monitor, it works as it should be (MBP screen is still black when I plug into external monitor).

  When I goes to display setting, it only shows my external monitor and doesn't show my MBP monitor at all.

  Any idea what could be the problem? I hope it's not due to hardware issue![64]

- **Bottom of screen issue, backlight?**

  The bottom of my screen did this when booting up. After restarting the screen is back to normal but i want to know what causes this because it worries me. This is the second time of this happening in the course of a year and a half. (MBP 2018)[65]



MacBook Pro 13", macOS 10.15
Posted on Dec 21, 2019 12:09 PM

- **Flexgate issues on 13'' Macbook Pro (Mid 2018)**

---

[63] *MacBook Pro (13-inch, 2018, Four Thunderbolt 3 Ports) Backlight Issue*, Discussions.Apple.com (Dec. 30, 2020), *available at* https://discussions.apple.com/thread/252244161 (*last accessed* Oct. 20, 2022) (2018 Macbook Pro).
[64] *Macbook Pro 2018 screen doesnt work. Work only with external screen*, Discussions.Apple.com (Dec. 29, 2019), *available at* https://discussions.apple.com/thread/250989338 (*last accessed* Oct. 20, 2022) (2018 Macbook Pro).
[65] *Bottom of screen issue, backlight?*, Discussions.Apple.com (Dec. 21, 2019), *available at* https://discussions.apple.com/thread/250966112 (*last accessed* Oct. 20, 2022) (2018 Macbook Pro).

Recently, I started having issues regarding the Macbook Pro display. At first, it displayed vertical purple lines depending on the angle of the display. Shortly after, it only displayed purple vertical bars. My belief is that the issue causing this is a damaged flex cable (flexgate). I have found that earlier model types (2016) had such a problem with the backlight cable, and Apple has recognized this and set up an extended warranty program. However, my Macbook is not eligible for this extended warranty, because it only covers 2016 Macbooks. I have found many more users with this problem, all having to pay 800 dollars for an entire screen replacement, because the flex cable wears out after normal use in about 1-2 years. Are there more people experiencing this problem, and why hasn't Apple recognized this yet?[66]



- So I have a macbook pro 2019 I am using my macbook at night last January 9 2021 put in sleep mode then when I used it in the morning of January 10 2021 I notice that my macbook was turn on because all keyboard keys has a light and the touchbar also has a display but the macbook retina lcd display did not show anything its only has a backlight and blackscreen and I can adjust the brightness from low to high and there is no display at all, and in minute vertical lines appear in macbook display , I tried to troubleshoot with it by resetting SMC,PRAM,NVRAM nothings happen, so I decided to connect it with external

---

[66] *Flexgate issues on 13" Macbook Pro (Mid 2018)*, Discussions.Apple.com (Jul. 2, 2020), *available at* https://discussions.apple.com/thread/251537414 (*last accessed* Oct. 20, 2022) (2018 Macbook Pro).

monitor through hdmi cable and it has display in external monitor without vertical lines in external monitor.

but its own display in macbook it has, when I restart my macbook the vertical line was not showing in macbook display after a minute it show again in macbook display.[67]



~~103.~~105.          In addition to the complaints posted to (and deleted from) Apple's website, consumers have also flooded social media and other internet fora with complaints about the issues stemming from the Defect.

- **My 2019 MacBook Pro with Touch Bar 13in is having the back light issue**

    Hi guys I need help. My 2019 MacBook Pro with Touch Bar (13inch) is having the screen backlight problem that they made a reprogram for in the past. I took it to the store they said I have to pay 600$ for. A replacement screen because it is not in the rep program. What should I do. I don't want to pay because it is a manufacture defect.!!!![68]

---

[67] *Macbook pro 2019 dark display but working external monitor*, Discussions.Apple.com (Jan. 10, 2021), *available at* https://discussions.apple.com/thread/252294403 (*last accessed* Oct. 20, 2022) (2019 Macbook Pro).
[68]

- **My display flex cable broke on my 2019 macbook pro, right after my warranty expired. I know this is a hardware defect for macbooks, and I'm wondering if apple would fix it, because I know they have a display backlight service program**

  https://support.apple.com/13-inch-macbook-pro-display-backlight-service

  So i know it says it only covers the 2016 macbooks, but this hardware defect happened on my 2019 macbook 13 inch, and ive seen reports of it happening on 2018 and 2019 and 2017 models.

  What I'm wondering is if apple will fix it because its a hardware defect that is a known issue with the macbook pros at my apple store. Will i have any luck with this? Or is my only year old 1400$ laptop out of luck from a hardware defect?[69]

- **Should replacing a backlight in my Macbook Pro w/ Touch Bar 2019 cost $850?**

  Basically just what the title says. My screen turned black randomly and I took it to the closest Apple repair store, and they are estimating it to be $850.

  Am I being scammed or is that a typical cost?[70]

---

Post by user Yonatan levi, *My 2019 MacBook Pro with Touch Bar 13in is having the back light issue*, MacRumors.com (Jun. 3, 2021), *available at* https://forums.macrumors.com/threads/my-2019-macbook-pro-with-touch-bar-13in-is-having-the-back-light-issue.2299161/ (*last accessed* Oct. 20, 2022) (2019 Macbook Pro).

[69] Post by user ineedandlove_acid, *My display flex cable broke on my 2019 macbook pro, right after my warranty expired. I know this is a hardware defect for macbooks, and I'm wondering if apple would fix it, because I know they have a display backlight service program*, Reddit.com, *available at* https://www.reddit.com/r/macbookpro/comments/jcfqsf/my_display_flex_cable_broke_on_my_2019_macbook/ (*last accessed* Oct. 20, 2022) (2019 Macbook Pro).

[70] Post by user colbs2187, *Should replacing a backlight in my Macbook Pro w/ Touch Bar 2019 cost $850?*, Reddit.com, *available at* https://www.reddit.com/r/macbookpro/comments/ps276z/should_replacing_a_backlight_in_my_macbook_pro_w/ (*last accessed* Oct. 20, 2022) (2019 Macbook Pro).

- "Stage light" effect on my Macbook M1 2020 - 12.3.1. Is it a hardware issue?[71]



- **Friendly PSA: Flexgate/Display flex cable issues can happen on newer models, like the 2018 and 2019 MacBooks, not just the 2016 MacBooks that are replaced in the replacement program.**

    . . .

    This is where the display cable that connects the display to the motherboard breaks and the display doesn't turn on at all if you open the MacBook more then a 45 degree angle.

    Apple says it affects 2016-2018 models on their website and still only covers the 2016 model in their warranty replacement program.

    Supposedly Apple fixed it with a slightly thicker cable in the 2018 MacBooks onward but there's several cases of it happening on MacBooks that aren't very old including mine.

    This can happen on all models. It happened on my 2019 MacBook Pro just a month after warranty expired. Apple wanted a $700 repair for the entire display for the cable.

---

[71] Post by user tncnhan, *"Stage light" effect on my Macbook M1 2020 - 12.3.1. Is it a hardware issue?*, Reddit.com, *available at*
https://www.reddit.com/r/macbookpro/comments/tx0no2/stage_light_effect_on_my_macbook_m1_2020_1231_is/
(*last accessed* Oct. 20, 2022) (2020 Macbook Pro).

I emailed Tim Cook several times about it for a week explaining it and someone from corporate called me about it and offered a free replacement. Not many people have that patience however.

Just a PSA. It can happen to anyone.[72]

- My 2019 16" MacBook Pro just started doing this and my only recourse is to pay for a new display which will arguably not address the issue just kick the can down the road. So incredibly frustrating. Escalated a customer service claim as far as I could but since I'm three weeks out of warranty they won't do anything to help.[73]

~~104.~~106.    Further, a consumer started a petition on Change.org—which has garnered

over 40,000 signatures since it was launched in or around 2018—requesting that Defendant

launch an extended warranty program to address the display backlight issues in the Class

Laptops.[74]

~~105.~~107.    Despite having knowledge of the defective flex cable design, at no time

while Defendant advertised and sold the Class Laptops did Defendant disclose to Plaintiff and

other consumers that the flex cable design is defective, or that the laptop was prone to display

backlight issues. Had Defendant disclosed the Defect, and had its consumers known that

Defendant's advertising was false and misleading, they would not otherwise have purchased

Class Laptops, or would have paid less for their Class Laptops.

~~106.~~108.    Not only has Defendant sold the defective Class Laptops, but Defendant

also unreasonably limited its repair program to the 13" 2016 Macbook Pro despite the fact that it

knew or should have known that the Defect impacts all of the Class Laptops because they have

---

[72] Post by user ineedandlove_acid, *Friendly PSA: Flexgate/Display flex cable issues can happen on newer models, like the 2018 and 2019 MacBooks, not just the 2016 MacBooks that are replaced in the replacement program*, Reddit.com, *available at* https://www.reddit.com/r/macbookpro/comments/k0bmhe/friendly_psa_flexgatedisplay_flex_cable_issues/ (*last accessed* Oct. 20, 2022).

[73] *Id.* (post by user jonhasglasses. (2019 Macbook Pro)).

[74] Alex P., *Fix all MacBook Pro 2016 and later with stage light effect or backlight shutdown #flexgate*, Change.org, *available at* https://www.change.org/p/apple-fix-all-macbook-pro-2016-and-later-with-stage-light-effect-or-backlight-shutdown-flexgate?redirect=false (*last accessed* Oct. 20, 2022).

the same defective design, *i.e.*, employing fragile flex cables that cannot withstand the stresses of ordinary use.

**F.    Apple's One-Year Warranty**

~~107.~~109.    Apple sold the Class Laptops with a one-year written express warranty, which covers defects in materials and workmanship.

~~108.~~110.    Apple expressly distinguishes device defects, which are covered by its warranty, from the following, which are not: (a) consumable parts, (b) cosmetic damage; (c) damage caused by use with another product; (d) damage from accident, misuse, abuse, liquid contact, or other external causes, (e) damage from operating the Apple product outside its published guidelines; (f) damage from unauthorized service or repairs; (g) damage to Apple products modified without Apple's written permission; (h) defects caused by normal wear and tear; and (i) products with the serial number removed.

~~109.~~111.    Apple expressly warranted the Class Laptops in writing and promised to "(i) repair the Apple Product using new or previously used parts that are equivalent to new in performance and reliability, (ii) replace the Apple Product with a product that is at least functionally equivalent to the Apple Product and is formed from new and/or previously used parts that are equivalent to new in performance and reliability, or (iii) exchange the Apple Product for a refund of your purchase price."

~~110.~~112.    Apple provides this warranty to buyers after the purchase of a Class Laptop is completed.

**VII.    TOLLING OF THE STATUTE OF LIMITATIONS**

~~111.~~113.    The statute of limitations for any claims that Plaintiff brings or could bring against Apple are tolled as a result of Apple's fraudulent concealment and unfair and deceptive trade practices. Plaintiff did not discover and could not have discovered through the exercise of

reasonable diligence the existence of the claims asserted herein until the display defects surfaced in Plaintiff' Class Laptops.

112.114.    As set forth above, Apple acted unfairly, fraudulently, and deceptively in concealing the Defect from Plaintiff and other consumers by making false representations about the superior quality of the Class Laptops' displays, as set forth above, to entice consumers to buy the defective Class Laptops. In addition, as alleged herein, Apple was aware of numerous consumer complaints about the defects in the Class Laptops, but never disclosed the defects to Plaintiff and the Class, and instead, continued making false representations about the performance and quality of the Class Laptops and continued selling the Class Laptops, despite their defective designs.

113.115.    At the time of the purchase of his Class Laptop, Plaintiff was unaware of any public information offered by Defendant that would have put him on notice that the Class Laptops had a defective flex cable design. Plaintiff understandably and reasonably relied on the representations that Apple made about the Class Laptops as having a premium display, as set forth herein. Plaintiff became aware of the latent and unobservable Defect only after it impacted his Class Laptop. Plaintiff was not at fault for failing to discover the defective design in the Class Laptops as the source of the display issues.

114.116.    Had Plaintiff and the Class known that the Class Laptops were defective, they would not have purchased the Class Laptops, would not have purchased them at the prices they did, or would have returned them during their respective return periods.

115.117.    Apple knowingly concealed the defects in the Class Laptops because it intentionally deleted complaints about the Defect from discussion forums on its website, and

because it attempted to remedy the Defect by lengthening the flex cables in the 2018 models and adding a thicker shield to the flex cables in the 2020 models.

116.118.    Apple had a duty to publicly disclose the Defect because, through its advertisements and promotional materials, it represented to Plaintiff and the Class that, among other things, the Class Laptops were of premium quality, each successive Class Laptop display was the best that Apple had ever designed, and the Class Laptops featured bright backlights that created a superior viewing experience. Apple failed to disclose facts that would have materially qualified these representations, including that the thin and fragile flex cables would degrade and eventually break as the result of opening and closing the laptop lid, resulting in display screen issues and/or complete display failure. Apple had a duty to disclose the truth about the defective design, and that the display screens were not of superior quality, as Apple represented them to be. Apple concealed these defects from Plaintiff and the Class.

**VIII.    CLASS ACTION ALLEGATIONS**

117.119.    Plaintiff brings this class action pursuant to D.C. Super. Ct.Fed. R. Civ. P. 23 and case law thereunder on behalf of himself and a Class of all others similarly situated.

118.120.    The proposed Class is defined as follows: All natural persons who purchased Class Laptops while residing in the District of Columbia. Excluded from the Class and Subclass are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Apple and their subsidiaries and affiliates; and (c) all persons who properly execute and file a timely request for exclusion from the Class. Subject to additional information obtained through further investigation and/or discovery, the foregoing definition of the Class may be expanded or narrowed.

45

~~119.~~121.    *Numerosity*: The Class is comprised of at least hundreds of owners of Class Laptops throughout the District of Columbia, making joinder impractical. Moreover, the Class is composed of an easily ascertainable, self-identifying set of individuals and entities who purchased, leased, or received an Affected Computer. The members of the Class are so numerous that joinder of all members is impracticable. The precise number of Class members can only be ascertained through discovery, which includes Defendant's sales, service, and complaint records. The disposition of their claims through a class action will benefit both the parties and this Court.

~~120.~~122.    Discovery will reveal which, if any, other Macbook Pros share the same defective design as the Class Laptops, and the Class can be defined to include such models by name at that time.

~~121.~~123.    *Commonality*: The critical questions of law and fact common to the Plaintiff Class that will materially advance the litigation are whether the Class Laptops are inherently defective, contrary to the expectations imparted by Defendant through its representations and omissions. Furthermore, other questions of law and fact common to the Class that exist as to all members of the Class and predominate over any questions affecting only individual members of the Class include the following:

    a.  Whether the Class Laptops have not or will not perform in accordance with the reasonable expectations of ordinary consumers;

    b.  Whether Defendant knew or should have known of the Defect;

    c.  Whether Defendant concealed from consumers and/or failed to disclose to consumers the Defect;

    d.  Whether Defendant's express warranty fails of its essential purpose;

    e.  Whether Apple breached the express warranty given to Plaintiffs and the Class;

f.  Whether Defendant failed to warn of the Defect in the Class Laptops or omitted critical information regarding the Defect in its marketing and sales materials;

g.  Whether Defendant breached the implied warranty of merchantability;

h.  Whether Plaintiff and the Class are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for repair or replacement of the Class Laptops; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Class Laptops as warranted and the Class Laptops containing the defect; and, (iii) Whether Plaintiff and the Class are entitled to all costs associated with replacement of their defective Class Laptops with non-defective Class Laptops;

i.  Whether Plaintiff and Class members would have purchased their Class Laptops, or whether they would have paid a lower price for them, had they known of the defective nature of the Class Laptops;

j.  Whether the Class Laptops were defective at the time of sale;

k.  Whether the defect substantially impairs the value of the Class Laptops;

l.  Whether Defendant knew or should have known that the Class Laptops contained defective flex cables but continued to promote and sell the Class Laptops without disclosing the problems and their consequences to consumers; and

m.  Whether a reasonable consumer would consider the Defect and its consequences to be material;

~~122.~~124.    *Typicality*: Plaintiff's claims are typical of the claims of the members of the Class, as all such claims arise out of Defendant's conduct in designing, manufacturing,

47

marketing, advertising, warranting, and selling the Class Laptops and Defendant's conduct in
concealing the Defect in the Class Laptops to owners and retailers.

123.125.      *Adequate Representation*: Plaintiff will fairly and adequately protect the
interests of the members of the Class and has no interests antagonistic to those of the Class.
Plaintiff has retained counsel experienced in the prosecution of complex class actions, including
but not limited to consumer class actions involving, *inter alia*, breach of warranties, product
liability, and product design defects.

124.126.      *Predominance*: This class action is appropriate for certification because
questions of law and fact common to the members of the Class predominate over questions
affecting only individual members, and a Class action is superior to other available methods for
the fair and efficient adjudication of this controversy, since individual joinder of all members of
the Class is impracticable. Should individual Class members be required to bring separate
actions, this Court would be confronted with a multiplicity of lawsuits burdening the court
system while also creating the risk of inconsistent rulings and contradictory judgments. In
contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the
delay and expense to all parties and the court system, this class action presents far fewer
management difficulties while providing unitary adjudication, economies of scale and
comprehensive supervision by a single court.

## COUNT I

**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**D.C. Code § 28-3905**
**(Brought on Behalf of the Class and the General Public of the District of Columbia)**

125.127.      Plaintiff adopts and incorporates by reference all allegations contained in
the foregoing paragraphs as though fully set forth herein.

126.128.      Plaintiff, individually, and on behalf of all other individuals similarly situated and the general public of the District of Columbia, brings this action pursuant to D.C. Code § 28- 3905(k).

127.129.      The District of Columbia Consumer Protection Procedures Act ("DCCPPA") prohibits unfair and deceptive trade practices in connection with the sale or transfer of consumer goods or services. *See* D.C. Code 28-3901(a)(6).The conduct described above and throughout this Complaint took place within the District of Columbia and constitutes unfair and deceptive business practices in violation of the DCCPA. *See* D.C. Code § 28–3904.

128.130.      The Class Laptops are consumer goods within the meaning of the DCCPPA in that they are items that a "person does or would purchase, lease (as lessee), or receive and normally use for personal, household, or family purposes." D.C. Code §§ 28–3901(a)(2)(B)(i), (a)(7).

129.131.      Plaintiff, members of the Class, and members of the general public of the District of Columbia who purchased their Class Laptops in the District of Columbia are consumers within the meaning of the DCCPPA as they are people who do "or would purchase, lease (as lessee), or receive consumer goods or services." D.C. Code § 28–3901(a)(2)(A).

130.132.      Defendant is a merchant within the meaning of the DCCPPA in that it directly and indirectly sells the Class Laptops, as well as other consumer goods, in the ordinary course of business. D.C. Code § 28–3901(a)(3).

131.133.      The DCCPPA prohibits any person from engaging in any "unfair or deceptive trade practice," including to:

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

49

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead;

(f) fail to state a material fact if such failure tends to mislead;

(f-1) use innuendo or ambiguity as to a material fact, which has a tendency to mislead;
. . .
(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered; [and]
. . .
(x) sell consumer goods in a condition or manner not consistent with that warranted by operation of sections 28:2-312 through 28:2-318, or by operation or requirement of federal law.

D.C. Code § 28–3904.

### *1.    Defendant's Deceptive Trade Practices Violate the DCCPA*

~~132.~~134.    Defendant deceived consumers, including Plaintiff and members of the Class, by misrepresenting and omitting material facts that had a tendency to and in fact did mislead consumers.

~~133.~~135.    Such deceptive misrepresentations of material fact include falsely representing that the Class Laptops, and in particular their displays: (1) had uses, characteristics, and benefits that they in fact lacked due to the presence of the Defect; and (2) were of superlative quality when they were in fact afflicted by the Defect.

~~134.~~136.    Specifically, Defendant made the following false and deceptive representations of the quality, characteristics, uses, and benefits of the Class Laptops in its advertising and marketing materials: that their "Retina" displays are "stunning and brilliant," "the best Mac notebook display ever" and the "Ultimate Viewing Experience" thanks to the "bright LED backlighting" that "allows MacBook Pro to represent the P3 wide color gamut for brilliant, true-to-life color in photos and videos" and offers "high contrast ratio," "produc[ing]

500 nits of brightness for spectacular highlights and bright whites, while delivering deep blacks thanks to the precise photo alignment of liquid crystal molecules."

135.137.      These representations are false and misleading because the Class Laptops' displays are prone to partial or complete backlight failure and/or flex cable failure that obscures the display with false colors. Partial failure of the backlight flex cable greatly diminishes contrast ratio and brightness, and complete failure causes the screen to go completely black. The failure of either of the backlight or graphics cables renders the display unable to accurately display color.

136.138.      Defendant also represented that the Class Laptops were suitable for use by professionals, which they are not due to their unreliable displays.

137.139.      Defendant also deceived consumers by omitting material facts from its advertising and marketing of the Class Laptops in a manner that tended to and did mislead consumers, including Plaintiff and members of the Class. In particular, Defendant failed to notify consumers that the Class Laptops harbored the Defect, an omission that mislead consumers as to the uses, characteristics, benefits, and quality of the Class Laptops' displays.

138.140.      Additionally, Defendant employed deceptive trade practices by misrepresenting and knowingly concealing, suppressing, or omitting material facts in their sale and advertisement of the Class Laptops in the District of Columbia. Defendant knew about the Defect prior to selling the Class Laptops and deceived consumers by advertising the Class Laptops without the intent to sell them as advertised. Defendant's advertising was also deceptive because it was rife with innuendo or ambiguity as to material facts, and such innuendo or ambiguity mislead consumers.

139.141.    Defendant failed to disclose that the Class Laptops do not possess high quality and reliable displays and therefore are not dependable or suitable to handle the mobile computing needs of consumers. Defendant either knew or should have known that Class Laptops were defectively designed and/or manufactured as alleged herein.

140.142.    At the time that the Class Laptops left Defendant's control, it knew or should have known that they contained the Defect due to Defendant's own internal testing, among other things, as well as the numerous consumer complaints, warranty claims, and repair data showing that earlier models contained defective flex cables. Defendant's knowledge is evidenced by, *e.g.*, its design changes in 2018 and 2020 and its habit of deleting customer posts complaining about the Defect.

141.143.    Despite the foregoing, Defendant failed to inform or educate retailers, Plaintiff, members of the Class, and members of the general public of the District of Columbia, about the defects and deficiencies of the Class Laptops at the time of sale. Defendant was in a superior position to know, and actually did know, the true facts about the hidden Defect in the Class Laptops. Defendant's acts and omissions, detailed herein, had the tendency to deceive retailers, Plaintiff, members of the Class, and members of the general public of the District of Columbia, and did in fact deceive the aforementioned persons to their detriment.

142.144.    As a direct and proximate cause of the violation of the DCCPPA, described above, Plaintiff, members of the Class, and members of the general public of the District of Columbia have been injured in that they have purchased the defective Class Laptops based on nondisclosure and misrepresentation of material facts alleged above. Had Plaintiff, members of the Class, and members of the general public of the District of Columbia known the

52

defective nature of the Class Laptops, they would not have purchased them or would have paid a lower price for their Class Laptops.

143.145.    These deceptive trade practices have directly, foreseeably, and proximately caused actual damages to Plaintiff and members of general public of the District of Columbia. Plaintiff and other members of general public of the District of Columbia are damaged in that, contrary to Defendant's previous representations, the Class Laptops are defective and not fit for the uses for which they are advertised, including for use as mobile computers.

### 2.    *Defendant's Unfair Trade Practices Violate the DCCPA*

144.146.    Defendant's omissions and misrepresentations of material facts in regard to the displays of the Class Laptops as alleged above are also unfair to Plaintiff and the Class.

145.147.    Those omissions and misrepresentations tended to and did mislead Plaintiff and other members of the Class in order to induce them to purchase the expensive Class Laptops. As such, the trade practices described above (1) offend public policy; (2) are immoral, unethical, oppressive, and unscrupulous; and (3) cause substantial injury to consumers. Defendant's acts and omissions are also unfair in that they cause substantial injury to consumers far in excess of any conceivable benefit and are injuries of a nature that they could not have been reasonably avoided by consumers.

146.148.    Defendant knew that the Class Laptops were defective but took advantage of the relative lack of knowledge and technical sophistication possessed by consumers, including Plaintiff and members of the Class, to sell the defective Class Laptops in the District of Columbia. Defendant knew that consumers would be unable to identify the Defect at the time of sale, that flex cable damage caused by the Defect typically manifested after months of use, and that blame for any display issue caused by the Defect could be placed on the Class Laptop

owner. Defendant's sale of the defective Class Laptops to unsuspecting consumers is an unfair

trade practice, as is Defendant's practice of requiring the laptop owner to bear the high cost of

repairing damage attributable to the Defect.

147.149.     Defendant used unfair trade practices in conducting its business within the

meaning of the DCCPPA. This unlawful conduct is continuing, with no indication that

Defendant will cease.

148.150.     Defendant acted willfully, knowingly, intentionally, unconscionably, and

with reckless indifference when it committed these unlawful trade practices.

149.151.     As a direct and proximate result of Defendant's unfair trade practices,

Plaintiff, members of the Class, and members of the general public of the District of Columbia

have suffered and/or will suffer damages, which include, without limitation, costs to inspect,

repair, or replace their Class Laptops, in an amount to be determined at trial.

150.152.     As a result of the unlawful trade practices described above, Plaintiff and

members of the Class have suffered ascertainable loss in the form of actual damages that include

the purchase price of Class Laptops for which Defendant is liable to Plaintiff and members of the

Class for treble their ascertainable losses or statutory damages in the amount of $1,500 per

violation, whichever is greater, pursuant to D.C. Code § 28–3905(k)(12).  Plaintiff further seeks

punitive damages, attorneys' fees and costs plus interest, along with equitable relief prayed for

herein.

### 3.    *Defendant's Warranty Practices Also Violate the DCCPA*

151.153.     In addition, Defendant violated D.C. Code § 28–3904(x) by breaching an

express warranty. As set described above, Defendant expressly warranted Class Laptops "against

defects in materials and workmanship when used normally in accordance with Apple's published guidelines for a period of ONE (1) YEAR from the date of original retail purchase."[75]

~~152.~~154.        Defendant also extended express warranties to consumers, including Plaintiff and the Class, by way of product descriptions and representations as to product qualities and characteristics made in sales literature at retailers, on its website, and via advertisements, among other methods, including the representations regarding the displays as described above.

~~153.~~155.        Class Laptops do not perform as represented because they lack the display quality they were represented by Defendant to have. This defect was known by the Defendant prior to the sale of the Class Laptops to Plaintiff and the Class. Accordingly, the Class Laptops purchased by Plaintiff and the Class were not free from defects in material and workmanship.

~~154.~~156.        Defendant knew that the Class Laptops were defective and that the displays of the Class Laptops would fail. Defendant also knew that its warranty failed its essential purpose and would not make Plaintiff, members of the Class, or members of the general public of the District of Columbia whole, and breached its warranty by failing to repair or replace the display assemblies of the Class Laptops. Because of these facts, deception or unfairness was present at both the time of contract formation and at the time of Defendant's breach of warranty.

~~155.~~157.        Defendant's express warranty provides that they will repair or replace the defective product or refund the purchase price. Defendant has breached the written warranty, as set forth above, by failing to repair or replace the defective product or refund the purchase price. Plaintiff did not negotiate or bargain for the terms of the express warranty provisions and any

---

[75] *Apple One (1) Year Limited Warranty*, Apple.com, *available at* https://www.apple.com/legal/warranty/products/non-ios-ipod-warranty-apac-english.html (last accessed Nov. 30, 2022).

purported limitations contained therein. The other customers of Defendant did not and could not

negotiate or bargain for the terms of the express warranty provisions and any purported

limitations contained therein. Instead, Defendant stood in a position of domination and control

over the terms.

156.158.     At the time that Defendant extended these express warranties to Plaintiff

and the Class, Defendant knew that the Class Laptops had a defect in their display assemblies.

Nevertheless, Defendant continued to place the defective products on the market and failed and

omitted to inform its customers, including Plaintiff and Class members of this inherent defect.

157.159.     Defendant has received sufficient and timely notice of the breaches of

warranty alleged herein. Despite this notice and Defendant's knowledge of the defect in the

Class Laptops, Defendant has failed and refused to honor its express warranty. Defendant's

failure to remedy the defect in the Class Laptops and all associated damages constitutes a breach

of express warranty.

158.160.     The foregoing breaches of express warranty at issue were substantial

factors in causing damages to Plaintiff and the Class members.

159.161.     As a result of the foregoing unlawful warranty practices, consumers,

including Plaintiff and the Class Members, have suffered damages. Moreover, if Plaintiff and

members of the Class had known the true facts about the defects in the Class Laptops, they

would have considered that information material in their decisions to purchase the Class Laptops

and would have not purchased the Class Laptops or would have paid less for them.

160.162.     In addition, Defendant violated D.C. Code § 28–3904(x) by breaching the

implied warranty of merchantability.

161.163.    Defendant is a merchant who sold the Class Laptops to Plaintiff and the Class for personal and business use.

162.164.    Defendant impliedly represented and warranted that the Class Laptops were free of defects, were of good and merchantable quality, fit for their intended purpose, and fit for the ordinary purposes for which such goods are used.

163.165.    In fact, Defendant has sold, directly or indirectly (through distributors and other retail outlets), thousands of Class Laptops nationwide and at least hundreds in the District of Columbia, to individuals and businesses.

164.166.    Defendant designed, manufactured, marketed, advertised, warranted, and sold the Class Laptop to Plaintiff.

165.167.    Plaintiffs and members of the Class were in privity with Defendant because they (1) purchased their Class Laptops from actual or apparent agents of Defendant, and (2) have contractual relationships stemming from Defendant's warranty provided in conjunction with purchases of the Class Laptops.

166.168.    Any limitation, or attempt at limitation, on the implied warranty of merchantability is unconscionable under these circumstances and is unenforceable.

167.169.    Defendant breached the aforementioned representations and implied warranties, as the Class Laptops suffer from the Defect. The Defect was known to Defendant prior to the sale and distribution of the Class Laptops at the time they left Defendant's control.

168.170.    The Defect rendered the Class Laptops unsuitable for the ordinary purposes for which they were used and purchased.

169.171.    Plaintiff provided notice to Defendant of the defect in his Class Laptop and requested that Defendant repair the defect. By virtue of the foregoing, Defendant has received notice of the breach of the warranties.

170.172.    As a result of the foregoing, Plaintiff has suffered damages that were directly and proximately caused by his defective Class Laptop. Moreover, if Plaintiff had known the true facts about the defects, he would not have purchased the Class Laptop or would have paid less for it.

171.173.    Plaintiff and members of the Class are entitled to the full remedies provided under Article 2 of the Uniform Commercial Code as adopted by the District of Columbia as well as all other applicable remedies.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, the general public of the District of Columbia, and all those similarly situated pray for a judgment against Defendant as follows:

A.    Finding that this action satisfies the prerequisites for maintenance as a class action set forth in ~~D.C. Super. Ct.~~Fed. R. Civ. P. 23(a), (b)(2), ~~and/or~~ (b)(3), and/or (c)(4) and certifying the Class defined herein;

B.    Designating Plaintiff as representative of the Class and his counsel as Class counsel;

C.    Entering judgment in favor of Plaintiff and ~~,~~ the Class ~~, and the general public of the District of Columbia and~~ against Defendant for all compensatory, individual and class damages;

D.      Granting Plaintiff, and the Class , and the general public of the District of Columbia treble damages or statutory damages in the amount of $1,500 per violation, whichever is greater;

E.      Granting Plaintiff and, the Class , and the general public of the District of Columbia punitive damages;

F.      Granting Plaintiff his costs of prosecuting this action, including attorneys' fees, experts' fees, and costs together with interest;

G.      Compelling Defendant to establish a program to inspect, replace, or replace all Class Laptops that possess the Defect;

H.      Compelling Defendant to establish a program to reimburse its warranty claims previously denied or paid in part and reimburse Plaintiff and the Class Members who have had to pay to repair or replace defective Class Laptops;

I.      Granting appropriate equitable relief, including, without limitation, an order requiring Apple to: (1) adequately disclose the defective nature of the Class Laptops; and (2) return to Plaintiff and members of the Class all costs attributable to remedying or replacing the Class Laptops, including but not limited to economic losses from the purchase of replacement laptops or second monitors;

J.      Granting injunctive relief on behalf of the Plaintiff, the Class, and members of the general public of the District of Columbia against Apple enjoining it from: (1) producing, manufacturing, packaging, and/or selling the Class Laptops harboring the Defect in the District of Columbia; and (2) enforcing the temporal limitation of its express warranty to offer repairs and replacements relating to the Defect in the Class Laptops; and

K.      Granting such further relief as the Court deems just.

59

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

[*Signatures on following page*]

60

Dated: January 110, 20243          By:

    /s/ *Nicholas A. MigliaccioJason S. Rathod*

                    Nicholas A. Migliaccio, Esq.
                    Bar No. 484366
                    Jason S. Rathod, Esq.
                    Bar No. 1000882
                    Bryan G. Faubus, Esq.
                    Bar No. 90010590(*pro hac vice* anticipated)
                    **MIGLIACCIO & RATHOD LLP**
                    412 H Street N.E., Ste. 302
                    Washington, DC 20002
                    Tel: (202) 470-3520

**Formatted:** No underline

**Formatted:** Justified, Tab stops: Not at 0" + 0.5" + 1" + 1.5" + 2" + 2.5" + 3" + 3.5" + 4" + 4.5" + 5" + 5.5" + 6" + 6.5"