**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

RICKY SCOTT, *individually and on behalf*
*of the General Public of the District of*
*Columbia*,

                *Plaintiff*,

    v.

APPLE INC.,

                *Defendant*.

Civil Action No. 23-475 (RDM)

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Ricky Scott brings this putative class action against Defendant Apple Inc.,

alleging that Apple violated the D.C. Unfair and Deceptive Trade Practices Act, D.C. Code § 28-

3905, in marketing certain allegedly defective laptop computers and by allegedly breaching an

express or implied warranty.  Dkt. 1-1 (Compl.).  After removing the case from D.C. Superior

Court to this Court, Dkt. 1 (notice of removal), Apple filed the pending motion to dismiss

pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Dkt. 12.  For the reasons

explained herein, the Court will **GRANT** in part and **DENY** in part that motion.

## I.  BACKGROUND

**A.      Factual & Procedural Background**

For purposes of considering Apple's motion to dismiss, the following allegations, which

are taken from Plaintiff's Complaint, are accepted as true.  *See Tah v. Glob. Witness Publ'g, Inc.*,

991 F.3d 231, 239 (D.C. Cir. 2021).

In the fall of 2016, Apple launched its fourth generation MacBook Pro models, which

"were up to 17% thinner than previous models."  Dkt. 1-1 at 12 (Compl. ¶ 25).  Apple described

these MacBook Pros as "the thinnest and lightest [versions] ever, with the 'best ever' display." *Id.* To accomplish this design, Apple connected the display to a controller board using flexible ribbon cables that were thinner than the larger gauge wire cables previously used. *Id.* (Compl. ¶ 26). Apple implemented this same essential design in its 2018, 2019, and 2020 MacBook Pros, *id.* at 13 (Compl. ¶¶ 27–28), consistently advertising its "new True Tone technology in [the] Retina display" as "the best ever," *id.* at 13–14 (Compl. ¶ 30); *see also id.* at 15–17 (Compl. ¶¶ 33, 36); *id.* at 18 (Compl. ¶ 38).

Plaintiff alleges that, "[c]ontrary to [this] marketing, the [MacBook Pro] [l]aptops possess a uniform physical defect that causes their displays and/or cameras to fail prematurely." *Id.* at 19 (Compl. ¶ 41). In particular, "[b]eginning in the 2016 Models, Apple opted to use flexible—and fragile—ribbon cables to connect the display to the t-con board inside the base enclosure." *Id.* (Compl. ¶ 42). These "cables are extremely thin," which "helps them navigate the tight bends along their circuitous route from the t-con board to the display." *Id.* at 20 (Compl. ¶ 44). Opening the laptops, however, "subjects the flex cables to bending stress," and, "[o]ver time, this stress causes the conductors in the flex cable to fatigue and, eventually, to fracture." *Id.* (Compl. ¶ 45). "In addition to failures caused by bending stress, the flex cables are also vulnerable to damage caused by dust and debris," *id.* at 22 (Compl. ¶ 47), which can lead to "glitches . . . on the display," *id.* at 23 (Compl. ¶ 49).

Depending on the nature and extent of the damage to the flex cables, a user may experience any of the following: (1) the "stage light" effect, whereby minor damage to the backlight cable causes the backlight to exhibit alternatively bright and dim areas at the bottom of the screen; (2) partial backlight failure; (3) complete backlight failure; (4) graphic glitches; or (5) camera failure. *Id.* at 24–26 (Compl. ¶ 50). Without a functioning backlight, the computer

display will turn black, rendering the laptop unusable. *Id.* at 24–26 (Compl. ¶¶ 50–51).  The

complaint further alleges that, in response to the defect, Apple added two millimeters to the

length of the flex cables, beginning with its 2018 MacBook Pros, and increased the thickness of

the protective material overlaying the cables in its 2020 MacBook Pros. *Id.* at 27–28 (Compl.

¶¶ 55–56).  The problem, however, persisted.  *Id.*

Apple provides MacBook Pro purchasers with a one-year written express warranty that

covers device defects.  *Id.* at 47 (Compl. ¶ 107).  Among other limitations, the warranty does not

cover "damage from accident, misuse, abuse, liquid contact, or other external causes."  *Id.*

(Compl. ¶ 108); *see* Dkt. 12-3 (Singh Decl., Ex. A).  In addition to Apple's general warranty

guarantees, Apple also implements "service programs," under which Apple offers to repair

specific issues in specific products free of charge.  *See* Apple Service Programs,

https://support.apple.com/service-programs.  In May 2019, Apple implemented a repair service

program for the 2016 13-inch MacBook Pro to address the defect in the flex cables.  Dkt. 1-1 at

26–27 (Compl. ¶ 54).  But this service program did not apply to 15-inch or 16-inch MacBook

Pros or to any MacBook Pros released after 2016.  *Id.* at 27 (Compl. ¶ 54).

In August 2020, Plaintiff purchased a 16-inch, 2019 MacBook Pro from Amazon.com

with a subscription to AppleCare+ (Apple's extended warranty program) for approximately

$2,099.  *Id.* at 10 (Compl. ¶ 19).  Apple's marketing of the 16-inch model specifically lauded its

superior display as "[i]mmersive," "brilliant," and "the ultimate pro notebook for the ultimate

user," *id.* at 16–17 (Compl. ¶ 36), representations that Plaintiff alleges he relied upon in making

his purchase, *id.* at 11 (Compl. ¶ 22).  About two months after he purchased the laptop, however,

the display started to show signs of the damage that can arise from regularly opening and closing

the laptop—namely, the "stage lighting" effect.  Dkt. 13 at 16; *see* Dkt. 1-1 at 20–23 (Compl.

¶¶ 45–48).  About six months after he made the purchase, the display backlight failed completely, rendering Plaintiff's laptop unusable.  Dkt. 13 at 16; *see* Dkt. 1-1 at 26 (Compl. ¶ 51).  P2P Computer Solutions repaired the laptop under the AppleCare+ extended warranty program, but because Apple identified the source of the problem as relating to accidental damage, Plaintiff was required to pay a $99 deductible.  Dkt. 1-1 at 11 (Compl. ¶ 21).

On January 10, 2023, Plaintiff initiated this action in D.C. Superior Court, seeking monetary damages and injunctive relief pursuant to the D.C. Consumer Protection Procedures Act.  *Id.* at 62–63 (Compl. Prayer for Relief ¶¶ A–K).  He brought the action individually and, pursuant to D.C. Superior Court Rule of Civil Procedure 23, on behalf of a class of "[a]ll natural persons who purchased [2018, 2019, and 2020 MacBook Pros (the "Class Laptops")] while residing in the District of Columbia," with specified exclusions.  *Id.* at 49 (Compl. ¶ 118).  On February 21, 2023, Apple removed the case to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.  Dkt. 1.  Subsequently, Apple moved to dismiss the complaint, Dkt. 12.

## B.    Statutory Background

Plaintiff alleges that Apple engaged in unfair and deceptive trade practices in violation of the District of Columbia's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901 *et seq.*, through its sales, marketing, and warranty practices, Dkt. 1-1 at 52–62.  The CPPA prohibits unfair and deceptive trade practices, irrespective of whether the consumer is in fact misled, deceived, or damaged, including practices that:

    (a)    represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have;
. . .

    (d)    represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e)     misrepresent as to a material fact which has a tendency to mislead;
         . . .

(f)     fail to state a material fact if such failure tends to mislead;

(f-1)   use innuendo or ambiguity as to a material fact, which has a tendency to
         mislead;
         . . .

(h)     advertise or offer goods or services without the intent to sell them or
         without the intent to sell them as advertised or offered; [and]
         . . .

(x)     sell consumer goods in a condition or manner not consistent with that
         warranted by operation of sections 28:2-312 through 28:2-318, or by
         operation or requirement of federal law.

D.C. Code § 28-3904.  The statute instructs that it "shall be construed and applied

liberally to promote its purpose," § 28-3901(c), which is to "assure that a just mechanism

exists to remedy all improper trade practices," § 28-3901(b)(1).

## II.  DISCUSSION

### A.    Standing

Before turning to Apple's motion to dismiss for failure to state a claim, the Court must

assure itself that Plaintiff has Article III standing and statutory standing under the CPPA.  The

constitutional standing inquiry is independent of whether the complaint alleges facts sufficient to

establish statutory standing under the CPPA.  *See Hancock v. Urban Outfitters, Inc.*, 830 F.3d

511, 513 (D.C. Cir. 2016); *Woodford v. Yazam, Inc.*, No. 22-cv-3665, 2023 WL 8083975, at *4

(D.D.C. Nov. 21, 2023).  The Court will address each requirement in turn.

1.    *Article III Standing*

To satisfy the "irreducible constitutional minimum" of Article III standing, a plaintiff

must plead (1) an "injury in fact" that is both "concrete and particularized" and "actual or

imminent, not conjectural or hypothetical;" (2) a "causal connection" between the alleged injury

5

and the challenged conduct; and (3) that "the injury will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations and internal quotation marks omitted).  Because standing is "not dispensed in gross," *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996), plaintiffs seeking damages and injunctive relief, as is the case here, must "separately demonstrate standing 'for each claim . . . and for each form of relief that is sought," *Doe 1 v. Apple, Inc.*, No. 21-7135, 2024 WL 925889, at *3 (D.C. Cir. Mar. 5, 2024).   A plaintiff asserting a CPPA claim must allege a concrete and individual injury-in-fact apart from the mere violation of the statute, *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); he must allege a "causal connection between the assertedly unlawful conduct and the alleged injury," *Allen v. Wright*, 468 U.S. 737, 753 n.19 (1984); *see, e.g.*, *Woodford*, 2023 WL 8083975, at *5; and he must allege that he is entitled to a form of relief for each claim that would redress his asserted injury.

Here, Plaintiff alleges that Apple engaged in unfair and deceptive trade practices in violation of the CPPA by misrepresenting the quality of its screens, by omitting material information about known defects in those screens, and by breaching its express and implied warranties when it failed to repair or replace the defective screens free of charge.  He alleges that he "relied on Apple's representations" about the quality of the screens when purchasing his laptop and that he "saw advertisements and marketing materials on Apple's website in which Apple represented, among other things" that the laptop's displays "were the 'best ever.'"  Dkt. 1-1 at 11 (Compl. ¶ 22).  He also alleged that, had he "known the defective nature" of the laptop, he "would not have purchased [it] or would have paid a lower price."  *Id.* at 56–57 (Compl. ¶ 142).  Finally, he alleges that Apple charged him a $99 deductible to repair his display, even though the company knew that the display failure was due to a defect, rather than to the type of "accidental damage" that would trigger the deductible.  *See id.* at 11 (Compl. ¶ 21).

Apple does not dispute Plaintiff's Article III standing to challenge the company's warranty practices or any alleged omissions in its marketing. But it does argue that Plaintiff lacks Article III standing to bring his affirmative misrepresentation claim. Dkt. 12-1 at 15–16. On Apple's telling, Plaintiff's complaint fails to allege facts sufficient to support Article III standing to bring an affirmative misrepresentation claim because it does not allege that Plaintiff viewed the specific misrepresentations identified in the complaint prior to purchasing his laptop. *Id.* at 16. For support, Apple relies on *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171 (D.D.C. 2003). *Williams* differs from this case, however, because the plaintiffs in that case had not personally experienced any defects in the products they bought, and they accordingly enjoyed the "benefit of their bargain." *Id.* at 176. Nor did the *Williams* plaintiffs allege that they had seen *any* misleading advertising. Rather, they sought to establish standing based exclusively on a "fraud on the market" theory, positing that the prices that they paid for the product were inflated in the marketplace due to misrepresentations made to others. *Id.* at 177.

Here, in contrast, Plaintiff alleges not only that he scrolled through the website and saw at least some of the allegedly misleading marketing material but also that he relied on those purported misrepresentations when purchasing his laptop and that he then personally experienced the alleged defect. Those allegations are sufficient—at least at the motion to dismiss stage—to assert a redressable injury-in-fact that is fairly traceable to the alleged misrepresentations and omissions. *See Mann v. Bahi*, 251 F. Supp. 3d 112, 119 (D.D.C. 2017) (finding that plaintiff had Article III standing to bring a CPPA claim based on allegations that he would not have purchased a service had he not encountered the alleged misrepresentations, and that the service he received was, in fact, subpar). It is, of course, possible that at a later stage of the proceeding, with a fuller evidentiary record, the Court might find that Plaintiff lacks standing to pursue all—or some

portion—of his affirmative misrepresentation claims.  But at this stage of the proceeding, the Court is satisfied that Plaintiff has sufficiently alleged that he has suffered a compensable injury resulting from the challenged misrepresentations.  For now at least, that resolves the question with respect to Plaintiff's damages claims.

When it comes to his claims for injunctive relief, however, the Court concludes that the complaint falls short in alleging Article III standing; it does not allege that Plaintiff is likely to face *future* harm based on any misrepresentation, omission, or breach of warranty.  Plaintiff asks the Court to "enjoin[] [Apple] from: (1) producing, manufacturing, packaging, and/or selling the Class Laptops harboring the Defect in the District of Columbia; and (2) enforcing the temporal limitation of its express warranty to offer repairs and replacements relating to the Defect in the Class Laptops."  Dkt. 1-1 at 63 (Compl. Prayer for Relief ¶ J).  But he has not alleged that he has an interest in Apple's future behavior sufficient to support his standing to pursue injunctive relief.  He has not alleged that he plans to buy another MacBook Pro laptop, that his current laptop will need a future repair that is subject to an express or implied warranty, or that he faces any risk of future injury based on the challenged practices.  Indeed, he does not even allege that he continues to use the MacBook Pro that he purchased in 2020 or that it is still subject to any relevant warranty.  *Cf. Krukas v. AARP, Inc.*, 376 F. Supp. 3d 1, 37 n.13 (D.D.C. 2019) (holding plaintiff had no standing on their claim for injunctive relief where she did not plead that she still maintained the policy at issue).

The Court, accordingly, concludes that Plaintiff has alleged facts sufficient to support his standing to seek compensatory relief for past wrongs but has failed to plead facts sufficient to support his standing to sue for injunctive relief to guard against future wrongs.

2.    *Statutory Standing*

"D.C. law is clear that the CPPA is meant to extend as far as Article III's requirements will permit."  *Mann*, 251 F. Supp. 3d at 119 (citing *Floyd v. Bank of Am. Corp.*, 70 A.3d 246, 251–52 (D.C. 2013).  Consistent with this sweeping mandate, the CPPA identifies various classes of plaintiffs with statutory standing to sue, including (1) "consumer[s]" who are authorized to bring suit to seek "relief from the use of a trade practice in violation of a law of the District" of Columbia; (2) "an individual," who may bring suit on her own behalf and on behalf of others and the general public to seek "relief from the use of a trade practice in violation of the law of the District" of Columbia, "when that trade practice involves consumer goods or services that the individual purchased or received in order to test or evaluate qualities pertaining to use" of the good or service; (3) "nonprofit organization[s]," which are authorized to bring suit under similar circumstances; and (4) "public interest organization[s]," which are authorized to bring suit, but only if they have a "sufficient nexus to the interests involved."  D.C. Code § 28-3905(k)(1).

Plaintiff's complaint does not specify which of these statutory provisions he is relying upon to bring the present suit.  By process of elimination, however, the Court can discern that he is relying upon the first of these provisions—that is, he is bringing suit as a "consumer . . . seeking relief from the use of a trade practice in violation of" D.C. law.  He does not allege, for example, that he "purchased or used" his MacBook Pro "in order to test or evaluate" the qualities of the laptop (as would be required for the second form of statutory standing to apply), nor does he allege that he is acting on behalf of a "nonprofit organization" or "public interest organization" (as would be required for the third or fourth forms of standing, respectively).

Plaintiff confirms, moreover, in his opposition brief that he intends to bring suit as a "consumer" pursuant to D.C. Code § 28-3905(k)(1)(A).  *See* Dkt. 13 at 51–52.

According to Apple, this means that Plaintiff "lacks statutory standing to sue on the public's behalf."  Dkt. 12-1 at 28–29.  That is correct but beside the point.  To be sure, Plaintiff's complaint includes class action allegations, and he hopes to certify a class that includes D.C. residents who purchased MacBook Pro laptop computers manufactured in 2018, 2019, and 2020.  Dkt. 1-1 at 7, 49–52 (Compl. ¶¶ 2, 117–24).  But a class action differs from suing "on behalf of . . . the general public," and Apple cites no authority suggesting that an individual bringing suit under the CPPA as a "consumer" is foreclosed from seeking to certify a class.  Indeed, Apple relied on the Plaintiff's class action allegation to remove this case pursuant to Class Action Fairness Act, 28 U.S.C. § 1332(d)(1)(B).  But to the extent Plaintiff purports to bring suit for damages on behalf of "the general public" separate and apart from his effort to bring a class action—and it is far from clear that he does—the Court agrees that he has failed to allege facts sufficient to bring such a suit.

Apple is correct that Plaintiff also "reserves the right to seek injunctive relief for the general public without resort to Rule 23 of the Federal Rules of Procedure."  Dkt. 13 at 52.  But because the Court has already concluded that Plaintiff has failed to allege facts sufficient to assert Article III standing for purposes of seeking injunctive relief, the Court need not reach the question whether the CPPA forecloses him from suing for injunctive relief on behalf of the general public.  For now, at least, that claim cannot proceed.

*    *    *

The Court will, accordingly, dismiss Plaintiff's claims for injunctive relief for lack of Article III standing, and will dismiss his claims for damages brought on behalf of the general

public (to the extent those claims differ from his claims for class-wide relief) for lack of statutory

standing.  In all other respects, however, the Court concludes that Plaintiff has adequately

alleged Article III and statutory standing.

**B.      Rule 12(b)(6) Motion to Dismiss**

1.      *Legal Standard*

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) is

designed to "test[ ] the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235,

242 (D.C. Cir. 2002).  In evaluating such a motion, the Court "must first 'tak[e] note of the

elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the

plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that

is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting

*Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (citation omitted).

Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion,

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient

factual matter, [if] accepted as true," to state a plausible claim to relief.  *Iqbal*, 556 U.S. at 678.

A plaintiff can survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely,"

but the facts alleged in the complaint "must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).

2.      *Analysis*

Plaintiff claims that Apple violated the CPPA by engaging in four categories of

misconduct: (1) affirmative misrepresentations, (2) material omissions, (3) unfair trade practices,

and (4) breach of warranties.  Dkt. 1-1 at 52–62 (Compl. ¶¶ 125–71).  The Court will address

each category in turn.

As an initial matter, Apple characterizes Plaintiff's suit as "largely lifted" from class actions previously litigated in the Northern District of California, in which other consumers alleged that Apple made affirmative misrepresentations and omissions relating to the 2016 MacBook Pro's flexible backlight cables.  *See Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033 (N.D. Cal. 2021), *aff'd*, 2022 WL 1577802 (9th Cir. May 19, 2022); *Ocampo v. Apple Inc.*, No. 5:20-cv-05857-EJD, 2022 WL 767614 (N.D. Cal. Mar. 14, 2022).  That contention somewhat overstates the comparison.   To be sure, the two cases brought in the Northern District of California, *Taleshpour v. Apple Inc.* and *Ocampo v. Apple Inc.*, involved similar factual allegations and similar legal claims.  But there are material differences between those cases and this case.

Most notably, Plaintiff brings the present action pursuant to the D.C. Consumer Protection Procedures Act, which was not at issue in *Taleshpour* or *Ocampo*.  (*Ocampo* did include claims under "the consumer fraud statutes of all 50 states and the District of Columbia," 2022 WL 767614, at *2, but the decision does not identify which D.C. law was at issue, nor does it contain any analysis of D.C. law.)  Much of the analysis in those decisions, moreover, addresses legal questions that have little bearing on the questions presented here.  *Taleshpour*, for example, devotes much of its analysis to the requirements for pleading a claim for fraud-by-omission under California law.  549 F. Supp. 3d at 1039–42, 1044 (relying on the principle that "if the defect arises outside of the warranty period, . . . the manufacturer only has a duty to disclose safety issues").  The elements of a claim under the California Unfair Competition Law, moreover, differ from the elements of a claim under the D.C. Consumer Protection Procedure Act.  *See* Dkt. 13 at 23; *cf. Frankeny v. Dist. Hosp. Partners, LP*, 225 A.3d 999, 1005 (D.C. 2020) (holding that intent and knowledge are not required elements of § 28-3904(a), (d), (e), and

(f)).  And, unlike in *Taleshpour* and *Ocampo*, the complaint in this case alleges that the alleged

product defect appeared within Apple's one-year warranty.  *Compare* Dkt. 1-1 at 10 (Compl.

¶ 20) (alleging that defect appeared "[a]pproximately one to two months after [Plaintiff's]

purchase" of the laptop), *with Taleshpour*, 549 F. Supp. 3d at 1044 ("Plaintiffs do not allege that

the defect arose before the expiration of the warranty period."); *Ocampo*, 2022 WL 767614, at *4

("Plaintiffs did not experience the alleged defect during the warrantied life of their MacBook

Pros.").

There are also, however, important similarities between this case and *Taleshpour* and

*Ocampo*.  The Court will, accordingly, look to those decisions for helpful guidance where

relevant.

### a.    Affirmative Misrepresentations

Plaintiff first alleges that Apple made misleading affirmative misrepresentations of

material fact in violation of § 28-3904(a), (d), and (e) regarding the "uses, characteristics, and

benefits" and "quality" of Apple's 2018, 2019, and 2020 MacBook Pro laptops.  Dkt. 1-1 at 54

(Compl. ¶¶ 133, 134).  Courts review CPPA claims under a reasonable consumer standard.  *See

Whiting v. AARP*, 701 F. Supp. 2d 21, 29 (D.D.C. 2010); *Krukas v. AARP, Inc.*, 376 F. Supp. 3d

1, 39 (D.D.C. 2019).  Although an actual showing of deception is not required under the CPPA,

CPPA plaintiffs "have no claim if they merely point to statements that are accurate, not

misleading to a reasonable consumer, or mere puffery."  *E.M. v. Shady Grove Reprod. Sci. Ctr.

P.C.*, 496 F. Supp. 3d 338, 409 (D.D.C. 2020) (internal citations and quotations omitted).

"Puffery" is defined as a "non-actionable exaggeration reasonably to be expected of a seller as to

the degree of quality of his product, the truth or falsity of which cannot be precisely determined."

*Id.* at 401 (alterations and internal quotation marks omitted).  Here, the alleged

misrepresentations fall into two categories: (1) the advertising and marketing materials on

Apple's website and (2) Apple's attribution that the damage to Plaintiff's laptop display was due

to accidental damage.  *See* Dkt. 1-1 at 11 (Compl. ¶¶ 21, 22).  The Court concludes that only the

latter is actionable.

      Regarding the first category of alleged misrepresentations, Plaintiff challenges several

statements that are not actionable.  Apple's representation that its Retina displays are "stunning

and brilliant," "the best Mac notebook display ever," and offer the "Ultimate Viewing

Experience," Dkt. 1-1 at 54 (Compl. ¶ 134), are subjective, general, non-verifiable statements

that constitute mere puffery.  *Cf. Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 30 (D.D.C.

2007) (holding defendant's advertisement of its product as the "best" was a "bald statement of

superiority" that constituted non-actionable puffery); *Jacobson v. Hofgard*, 168 F. Supp. 3d 187,

196 (D.D.C. 2016) (holding defendant's characterization of its property as "stunning" was a

"classic example of commercial puffery on which no reasonable person would rely").

      Apple did make some specific and verifiable representations about the MacBook Pro's

technical specifications, including that the laptops' "bright LED backlighting" "allows MacBook

Pro to represent the P3 wide color gamut for brilliant, true-to-life color in photos and videos" and

that the laptops offer "high contrast ratio, produc[ing] 500 nits of brightness for spectacular

highlights and bright whites, while delivering deep blacks thanks to the precise photo alignment

of liquid crystal molecules."  Dkt. 1-1 at 54–55 (Compl. ¶ 134).  Apple argues that these

representations are not actionable (1) because Plaintiff does not allege that they are false or

inaccurate and (2) because the statements are not related to the alleged defect.  *See* Dkt. 12-1 at

18–19.  The Court is unpersuaded by Apple's second argument.  Plaintiff alleges that the defect

in the flex cables is present in both the backlight flex cable and graphic cables, which leads, over

time, to backlight failures, colorless displays, and graphic glitches that obscure the screen.  Dkt. 13 at 37; Dkt. 1-1 at 24–26 (Compl. ¶ 50).  Those allegations are enough to plead a relationship between the alleged misrepresentation and the alleged defect.

Apple's first argument, however, is persuasive; the presence of the alleged defect does not make Apple's statements "false" in a way that is actionable as an affirmative misrepresentation.  Plaintiff does not allege that the laptop *never* met these specifications. Rather, he alleges that a defect disrupts or erodes those features over time.  The fact that an alleged defect may interfere with certain features over time points to the existence of a possible omission but not an affirmative misrepresentation.

Plaintiff argues, in the alternative, that these assertions constitute actionable affirmative misrepresentations based on their tendency to mislead.  Dkt. 13 at 37.  The complaint, however, does not plausibly allege that a reasonable consumer would see the technical specifications and interpret them as statements about the reliability or durability of the screens rather than as statements about the quality of the screens when new.  *Cf. Taleshpour*, 549 F. Supp. 3d at 1041 (holding that the pleadings did not plausibly allege that the technical specifications would mislead a reasonable consumer toward "inaccurate conclusions about the reliability or useful life of the display").

Turning to the second category of alleged misrepresentations, Plaintiff argues that Apple misrepresented the nature of the damage to his laptop by falsely attributing the problem to accidental damage rather than to a defect in the flex cables.  Dkt. 13 at 35; Dkt. 1-1 at 11 (Compl. ¶ 21).  Apple merely responds that Plaintiff "does not allege that there was no accidental damage to the screen or external enclosure of his device."  Dkt. 12-1 at 11–12.  The Court is unpersuaded, however, that Plaintiff is required to anticipate Apple's defenses in his complaint.

Here, he alleges that the flex cables were defective, that this defect causes the "stage lighting" effect, partial backlight failure, complete backlight failure, graphic glitches, and camera failure, and he alleges that a few months after purchasing his 2019 MacBook Pro, he noticed that the display was experiencing the "stage lighting" effect and that, after four to six months, the backlight failed entirely.  Dkt. 1-1 at 10–11, 24–26 (Compl. ¶¶ 20, 50); *see also id.* at 19 (Compl. ¶ 41) (alleging "a uniform physical defect that causes [the fourth generation MacBook Pro] displays and/or cameras to fail prematurely"); *id.* at 28 (Compl. ¶ 56) (alleging that "the telltale symptoms of flex cable damage caused by the Defect have appeared in 2020 MacBook Pros"); *id.* at 31 (Compl. ¶ 68) (explaining how "as a result" of the flex cable defect, "the Class Laptops are prone to backlight failure and graphics glitches that render the display and, therefore, the Class Laptops unusable as intended").  When considered alongside Apple's claim tha tPlaintiff's laptop stopped working due to "accidental damage," those allegations are sufficient to state a claim for affirmative misrepresentation.[1]

The Court will, accordingly, grant Apple's motion to dismiss as to Plaintiff's affirmative misrepresentation claim relating to Apple's advertising and marketing materials but will deny the motion with respect to Apple's alleged misrepresentation that the damage to Plaintiff's laptop was caused by accidental damage.

---

[1]  That said, it is unclear whether this alleged misrepresentation is more properly brought pursuant to § 28-3904(k), which addresses "falsely stat[ing] that services, replacements, or repairs are needed."  *Cf. Ohia v. Aqua Finance Inc*., No. 20-cv-03788, 2022 WL 1422824, at *3 (D.D.C. Mar. 24, 2022) (denying a motion for judgment on the pleadings where plaintiff sufficiently alleged that the defendant violated § 28-3904(k) by misleading plaintiff into believing that the replacement of his air conditioning coil was necessary).  Neither Apple nor Plaintiff addresses this question, however, and the Court declines to reach it *sua sponte*.

b.    <u>Misleading Omissions</u>

Plaintiff also asserts claims based on Apple's alleged material omissions relating to "the uses, characteristics, benefits, and quality of the Class Laptops' displays" in violation of § 28-3904(f), and, in particular, that Apple failed to inform consumers that the MacBook Pro laptops harbored the alleged defect.  Dkt. 1-1 at 55 (Compl. ¶ 137).  Apple responds that this claim is not actionable under the CPPA because Plaintiff has not plausibly alleged knowledge or materiality.  Dkt. 12-1 at 20.  Apple's argument fails in both respects.

Apple's first contention fails as a matter of law: under the CPPA, Plaintiff is not required to plead that Apple knew about the alleged defect.  *See Frankeny*, 225 A.3d at 1004–05; *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1073 (D.C. 2008).  The CPPA requires only that Apple "fail[ed] to state a material fact if such failure tends to mislead." D.C. Code § 28-3904(f).  Apple replies that Plaintiff must plead that Apple knew of the defect in order to establish that it "concealed" the defect.  Dkt. 14 at 24.  But the statute does not require proof of "concealment" either.  *Cf. Frankeny*, 225 A.3d at 1004 (distinguishing CPPA claims from common law fraud claims).  Nor is Apple correct on the facts; drawing all inferences in Plaintiff's favor, as the Court is required to do at this stage of the proceeding, the complaint is best construed to allege that Apple was aware of the defect, at least by the time that Plaintiff purchased his MacBook Pro in 2020.

Apple's second contention—that Plaintiff has failed to allege that the omission was material—relies, at least, on a correct statement of the law: the CPPA includes a materiality requirement.  But Apple is mistaken about what Plaintiff was required to plead to satisfy that requirement.  An "omission is material if a significant number of unsophisticated consumers would find that information important in determining a course of action." *Saucier v.*

*Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) (citation omitted); *see also Simon v. Hofgard*, 172 F. Supp. 3d 308, 316 (D.D.C. 2016).  The question of materiality is typically a question of fact to be resolved by a jury.  *See Mann*, 251 F. Supp. 3d at 126.  At this stage, Plaintiff must merely allege facts that, if taken as true, would allow the Court plausibly to conclude that a significant number of consumers would find the information important when deciding to purchase a 2018, 2019, or 2020 MacBook Pro laptop.  Plaintiff's complaint meets that modest threshold.  *See* Dkt. 1-1 at 8, 48, 56 (Compl. ¶¶ 8, 114, 142).  It alleges that the defect caused substantial problems with the display, *see id.* at 24–26 (Compl. ¶ 50), and was a common problem, posted about by many consumers and the subject of a petition signed by 40,000 individuals, *see id.* at 39–46 (Compl. ¶¶ 100–04).

Finally, Apple argues in the alternative that this Court should dismiss Plaintiff's related class allegation because the putative class includes consumers who experienced defects that were not manifested until after the warranty expired and that are thus subject to different standards. Dkt. 14 at 22.  This Court has yet to address class certification and concludes that it would confuse the process to address issues relating to class certification in resolving Plaintiff's motion to dismiss.  Apple is free to raise this issue at the class certification stage of the proceeding.

The Court will, accordingly, deny Apple's motion to dismiss Plaintiff's CPPA omission claims, but will permit Apple to revisit the issue—at least in part—at the class certification stage.

c.    Unfair Trade Practices

The CPPA's prohibition on "unfair and deceptive trade practices" contains a list of unlawful trade practices, which includes the specific practices challenged in Plaintiff's other claims.  *See* D.C. Code § 28-3904.  That list, however, is "nonexclusive," *Mann*, 251 F. Supp. 3d at 117 (citing *Atwater v. D.C. Dep't of Consumer & Regul. Affs.*, 566 A.2d 462, 466 (D.C.

1989)), and plaintiffs can bring a general unfair trade practices claim in addition to their claims under specific enumerated practices. Courts must then decide whether an alleged practice qualifies as an "unfair and deceptive trade practice" generally, apart from its inclusion in the list. Making that determination is further complicated by the fact that the CPPA does not define the phrase "unfair and deceptive trade practice." The CPPA does, however, offer some guidance. It provides:

> In construing the term "unfair or deceptive trade practice" due consideration and weight shall be given to the interpretation by the Federal Trade Commission and the federal courts of the term "unfair or deceptive act or practice," as employed in section 5(a) of [the Federal Trade Commission Act].

D.C. Code § 28-3901(d).

According to Apple, this guidance dooms Plaintiff's complaint because the complaint fails to track the elements of a three-factor balancing test courts use to evaluate unfair trade practices claims under the Federal Trade Commission Act. Dkt. 12-1 at 25 (citing *Yimam v. Mylé Vape, Inc.*, 2020 D.C. Super. LEXIS 7, at *16–17 (D.C. Super. Ct. June 11, 2020)). Under that test, the defect must be (1) "likely to cause substantial injury," (2) "not reasonably avoidable by consumers," and (3) "not outweighed by countervailing benefits to consumers or to competition." *Yimam*, 2020 D.C. Super LEXIS 7, at *16–17. Those are not, however, required elements of the claim; rather, courts are simply directed to give "due consideration and weight" to the Federal Trade Commission's interpretation of an "unfair or deceptive act or practice" and to the ways in which courts have interpreted Section 5(a) of the Federal Trade Commission Act. D.C. Code § 28-3901(d). Applying this guidance, the Court is persuaded that Plaintiff has stated an unfair and deceptive trade practices claim.

Apple next argues that Plaintiff's complaint fails to state a claim for an unfair trade practice because it merely alleges that "the trade practices described" elsewhere in the complaint

"(1) offend public policy; (2) are immoral, unethical, oppressive, and unscrupulous; and (3) cause substantial injury to consumers" and are "also unfair." Dkt. 12-1 at 24–25 (quoting Dkt. 1-1 at 57 (Compl. ¶ 145)). But that is not all that the complaint alleges in support of Plaintiff's unfair trade practices claim. Plaintiff's complaint includes extensive detail regarding the alleged defect and Apple's failure to disclose the defect to consumers. *See* Dkt. 1-1 at 19–26 (Compl. ¶¶ 41–50). It also alleges that Apple "knew that the [laptops] were defective but took advantage of the relative lack of knowledge and technical sophistication possessed by consumers . . . to sell the defective" laptops; that Apple "knew that consumers would be unable to identify the [d]efect at the time of sale;" and that Apple left it to consumers "to bear the high cost of repairing damage attributable to the [d]efect." *Id.* at 57–58 (Compl. ¶ 146). Considered as a whole, Plaintiff's complaint adequately alleges that the defect was likely to cause substantial injury, that consumers could not reasonably avoid that injury, and that the no "countervailing benefits" outweigh that injury. The fact that the complaint does not precisely track the Federal Trade Commission's guidance is of no moment.

Apple makes several arguments to the contrary; none, however, is availing. First, Apple argues that, as a matter of law, Plaintiff's purported injury is not "substantial" because Apple resolved the display issue under his AppleCare+ agreement and he paid only $99. Dkt. 12-1 at 25; *see also* Dkt. 14 at 26. But even a small economic harm can be "substantial" and is not "trivial or merely speculative," particularly "if it does a small harm to a large number of people." *Am. Fin. Servs. Ass'n v. FTC*, 767 F.2d 957, 972 (D.C. Cir. 1985). The fact that Plaintiff paid for AppleCare+ does not mean that he "bargained for" the $99 deductible, if, as Plaintiff alleges, he was charged the deductible in violation of the AppleCare+ terms and conditions. *Contra* Dkt. 14 at 26. Second, Apple argues that any injury is outweighed by the benefits resulting from the

MacBook Pro's thinner and lighter design. *Id.* But that contention ignores Plaintiff's allegation that the defect in the flex cables disrupts the screen's display in a way that far exceeds any benefit. *See* Dkt. 1-1 at 57 (Compl. ¶ 145). Nor does the asserted benefit excuse Apple's alleged failure to disclose the defect, so that consumers could make their own decisions about whether the thinner and lighter design was worth the risk. As Plaintiff explains, he "would not have purchased [his MacBook Pro] had [Apple] disclosed the [d]efect." Dkt. 13 at 45. Any factual dispute, moreover, over the nature of the injury and the benefit and about whether the benefit outweighed the injury is not subject to resolution on a motion to dismiss. *Cf. In re MacBook Keyboard Litig.*, No. 18-cv-02813, 2019 WL 1765817, at *9 (N.D. Cal. Apr. 22, 2019); *Adm'rs of the Tulane Educ. Fund v. Ipsen Pharma, S.A.S.*, 771 F. Supp. 2d 32, 40 (D.D.C. 2011).

The Court will, accordingly, deny Apple's motion to dismiss Plaintiff's unfair trade practices claims.

        d.    <u>Express and Implied Warranties</u>

Finally, Plaintiff alleges that Apple also violated § 28-3904(x) by breaching Apple's express warranty and the implied warranty of merchantability. Dkt. 1-1 at 58, 60 (Compl. ¶¶ 151, 160). Apple moves to dismiss these claims on two grounds: first, that its repair of Plaintiff's laptop, as one of the remedies it may elect to provide under the warranty, forecloses his express warranty claim, and, second, that the plain language of the warranty precludes Plaintiff's implied warranty of merchantability claim. Dkt. 12-1 at 26–27. Neither argument is convincing.

First, Apple notes that it repaired Plaintiff's laptop and argues, accordingly, that he is "impermissibly dressing up a contract dispute as a consumer protection claim." Dkt. 14 at 27; *see also* Dkt. 12-1 at 26 n.10 (citing *Kelleher v. Dream Catcher, L.L.C.*, No. 16-cv-02092, 2019

WL 3458459, at *8 (D.D.C. July 31, 2019)).  This argument misses the mark.  Plaintiff alleges

that Apple breached its express warranty "by selling the defective [laptops] and then by refusing

to repair [his] damaged laptop *at no cost* even though the damage fell within [the warranty's]

scope."  Dkt. 13 at 47–48 (emphasis added).  Plaintiff does not assert a common law breach of

contract claim dressed up as a general CPPA claim unmoored to any statutory text.  *Cf. Kelleher*,

2019 WL 3458459, at *8.  Instead, he alleges that Apple violated a specific provision of the

CPPA, § 28-3904(x), which addresses warranties, including "express warranties" as defined by

D.C. Code § 28:2-313.  At a later stage of the proceeding, Apple will be free to argue that it did

not breach that express warranty—or, more precisely, did not sell the laptops or refuse repairs

"in a condition or manner . . . [in]consistent with that warrant[y]," Dkt. 12-1 at 26 n.10 (quoting

D.C. Code § 28-3904(x))—but that question is for another day.

> Second, Apple seeks dismissal of Plaintiff's claim that Apple breached the implied

warranty of merchantability when it "impliedly represented and warranted that the [MacBook

Pro laptops] were free of defects."  Dkt. 1-1 at 61 (Compl. ¶ 162).  Plaintiff avers that the laptops

suffer from a significant defect that was known to Apple prior to the laptops' sale and

distribution.  *Id.* (Compl. ¶ 167).  Apple responds that its limited warranty "disclaims all

statutory and implied warranties, including without limitation, warranties of merchantability,"

which Apple argues "squarely preclude[s]" Plaintiff's claim.  Dkt. 12-1 at 27.  But Apple's

disclaimer is at odds with D.C. Code § 28:2-316.01, which is incorporated by reference into D.C.

Code § 28-3904(x).  Under that provision, a disclaimer of implied warranties is unenforceable

with respect to the sale of consumer goods and services except when applied to "particular

defects and limitations of consumer goods and services noted conspicuously in writing at the

time of sale."  § 28:2-316.01(3).

Apple argues that it satisfied the disclaimer provision because it disclosed the particular warranty—*i.e.*, the warranty of merchantability—that it disclaimed. *See* Dkt. 14 at 27–28. But that argument misconstrues the statutory exception. Section 28:2-316.01(3) applies only when the merchant identifies a "*particular defect*[] [or] *limitation*" of the product "conspicuously in writing at the time of sale." D.C. Code § 28:2-316.01(3) (emphasis added). In other words, the merchant must identify the defect that is disclaimed; it is not sufficient merely to disclaim all implied warranties of merchantability. The statutory provision is designed to limit the kind of sweeping and amorphous disclaimer of warranties that Apple now seeks to invoke. *See* Am. L. Prod. Liab. 3d § 22:13, Westlaw (2024). Thus, without even reaching the question whether Apple's disclosure of its limitation of warranties was conspicuously made in writing "at the time of sale," the disclosure was not specific to particular defects or product limitation and, accordingly, does not fall within the exception to § 28:2-316.01's limitation of exclusion or modification of warranties.

The Court will, accordingly, deny Apple's motion to dismiss Plaintiff's express and implied warranty claims pursuant to § 28-3904(x).

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss, Dkt. 12, is hereby

**GRANTED** in part and **DENIED** in part.  The motion is **GRANTED** as to Plaintiff's claims for

injunctive relief and as to Plaintiff's affirmative misrepresentation claims based on Apple's

advertising and marketing materials.  The motion is **DENIED** as to Plaintiff's affirmative

misrepresentation claim based on Apple's representation that the damage to his laptop was

caused by accidental damage, as to his misleading omission claims, as to his unfair trade

practices claims, and as to his express and implied warranty claims.

**SO ORDERED.**

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  November 6, 2024